HARTFORD ACCIDENT & INDEMNITY CO. *v.* PARTRIDGE.

(*Jackson,* April Term, 1945.)

Opinion filed January 5, 1946.

Rehearing denied March 2, 1946.

W. C. Rodgers, of Memphis, for complainant.

THOMAS C. FARNSWORTH and KING, KING & LAUGHLIN, all of Memphis, for defendant.

MR. JUSTICE CHAMBLISS delivered the opinion of the Court.

While riding as a guest in an automobile driven and owned by Luther E. Hampton, Sadie Partridge suffered injuries for which she sued to recover damages from Hampton, charging him with negligence. Hampton carried insurance in the Hartford Accident & Indemnity Company. The policy included a standard provision which provided, as a condition precedent to suit, that the insured should co-operate with and render all reasonable assistance in the defense of any such action.

Hampton reported the accident and the bringing of the action to the insurance company, which assumed the defense, being advised by the insured that the accident was caused by the blowing out of a tire, and that he had been guilty of no negligence. He conferred and co-operated with the attorneys representing the insurance company in the preparation of the case for trial and agreed to attend the trial. However, although fully informed of the day set for the trial, the insured did not appear. The court refused to grant a continuance because of the absence of the defendant-insured, alleged to be a material witness, but postponed the hearing of the case when called for trial at 10:00 A. M. on the morning of the day set until 2 o'clock that day. Counsel made diligent effort to locate the insured, but were unable to reach him, or learn his whereabouts. The attorneys for the insurance company thereupon, with the consent of the court, relying upon the absence of the insured as a breach of his obligation to co-operate, withdrew from the defense.

The case was proceeded with and resulted in a judgment for $15,000 against the defendant Hampton. This was on Monday, October 5, 1942. Several days later the insured, Hampton, was reached and interviewed by the attorneys for the insurance Company, who obtained from him a statement in explanation of his absence on the day of the trial. Satisfied that this explanation did not disclose a reasonable excuse for his absence and failure to perform his obligation to attend and co-operate, he was advised that the insurance company would not reassume the defense of the action, and further advised to secure other attorneys to represent him. This he did not do, and the time for the presentation of a motion for new trial elapsed and the judgment became final.

The instant suit was brought by Sadie Partridge to recover from the Indemnity Company on this judgment the sum of $5,000, in accordance with the terms of the policy which provide that any person who "has secured such judgment . . . shall thereafter be entitled to recover under the terms of this policy in the same manner and to the same extent as the insured." The bill alleged the recovery of the judgment as aforesaid and the insolvency of the insured, Hampton.

The Indemnity Company denied liability and defended on the ground that the following condition precedent of the contract of insurance had been breached by the insured, without reasonable excuse:

"7. Assistance and Cooperation of the Insured.

"The insured shall cooperate with the company and, upon the company's request, shall attend hearings and trials and shall assist in effecting settlements, recovering the property described herein, securing and giving evidence, obtaining the attendance of witnesses and in the conduct of suits; . . .

"8. Action Against Company.

"No action shall lie against the company unless, as a condition precedent thereto, the insured shall have fully complied with all of the terms of this policy; . . ."

The chancellor heard proof and the fact that the insured had failed to attend the trial, as hereinbefore related, being admitted, and finding that the complainant had not overcome the burden therefore upon her to show that the insured had a reasonable excuse for such failure, dismissed the bill. The Court of Appeals reversed and gave judgment, being apparently of opinion that the explanation offered on the trial by the testimony of the insured of his absence amounted to an excuse reasonable in law. We granted *certiorari.*

 There can be no question that the condition of the contract of insurance above recited is valid and binding upon both the insured and the complainant below, whose rights are derivative, rising no higher than those of the named insured under the policy contract, she being entitled to recover only "in the same manner and to the same extent as the insured."

In the recent case of *Horton* v. *Employers' Liability Assurance Corporation, Limited,* 179 Tenn. 220, 224, 225, 164 S. W. (2d) 1016, 1017, this Court, citing annotations from A. L. R. and other authorities, said:

"The provision of the policy requiring the assistance and cooperation of the insured in the defense of any suit brought by a third party to recover under the policy is valid, in the absence of any statute to the contrary. Annotation, 72 A. L. R. 1448; annotation 98 A. L. R. 1465. The provision is a condition precedent, failure to perform which, in the absence of waiver or estoppel, constitutes a defense to liability on the policy. *Bachhuber* v. *Boosalis,* 200 Wis. 574, 229 N. W. 117; *Coleman* v. *New Amsterdam*

*Casualty Co.,* 247 N. Y. 271, 160 N. E. 367, 72 A. L. R. 1443. In *Watkins* v. *Watkins,* 210 Wis. 606, 245 N. W. 695, 698, the court said: 'Policies containing covenants the same as or similar to those contained in this policy have been so often sustained that the question should be considered at rest,' and added that 'if insurers may not contract for fair treatment and helpful cooperation by the insured, they are practically at the mercy of the participants in an automobile collision.'

"Violation by the insured of the cooperative provisions of a liability policy is available as a defense to an action by a third person injured in an accident. By the great weight of authority, although there is some conflict on the point, breach of contractual provisions relating to acts of omission subsequent to the accident is, in the absence of collusion between the insurer and the insured, available to the insurer as against the injured person, if, in the circumstances, it would have been available against the insured. Annotation, 85 A. L. R. 70. In *Royal Indemnity Co.* v. *Watson,* 5 Cir., 61 F. (2d) 614, the court observed that it is held by the overwhelming weight of authority that the rights of a third person can rise no higher than, and are dependent upon, the rights of the insured."

The issue before us narrows to the sole question whether or not the complainant has met and overcome the clear proof of a breach by the insurer of this condition precedent by proof of a reasonable excuse for the failure of the insured to attend the trial. This is largely a question of fact, or of the proper deductions to be drawn from undisputed facts.

The facts apparent at the time and on the day of the trial are not in dispute and are as have been above recited. Thus far the breach was complete. However, shortly thereafter, and within the time limit for the filing of a

motion for a new trial, the defendant-insured was located and interviewed by the legal representatives of the insurance company; and we understand it to be conceded that if, *at this time,* an explanation of his absence so reasonable as to justify the taking of these remedial steps had been given, it would have become the duty and obligation of the insurance company to so proceed, and thus perform the spirit of its contract in protection of the rights of the parties.

The issue, therefore, further narrows to the consideration and appraisal of the statements, explanation and excuses at that time presented by the insurer for his failure to attend the trial. Here was an opportunity, afforded by the diligence of counsel for the insurer, for the insured to re-instate his protective rights under his policy. What use did he make of it? What did he say on that occasion and what was the natural deduction to be made therefrom?

After stating that he knew that the case had finally been set for Monday, October 5th, and that it would be necessary for him to be present at that time, Mr. Hampton thus stated his reason for absenting himself.

"A. Well, I don't know just how to word it, other than I just got out on a drinking party and got hell whipped out of me is all I can say, and was not able to appear in court on Monday. That is the nearest I can say.

"Q. When did you start on this party, Mr. Hampton? A. Well, on Saturday afternoon. I drank a little bit on Friday night, and I got my change Saturday afternoon—I worked seven and a half hours on Saturday, and drew my time in full, and I left there and went, I don't know where, the other side of Millington, I know that.

"Q. How long did you stay at this place the other side of Millington? A. Oh, I guess twelve or one o'clock that night.

"Q. When after that Mr. Hampton, was the first time you returned home? A. Thursday, about ten thirty."

After then saying that neither his wife, others at his home, nor his employer knew where he was in the meantime (he testified elsewhere that he stayed with friends in a trailer court camp) he was asked: "Very frankly, did you try to keep people from knowing where you were?" To which he answered: "I did for a fact. I really did." He then added that this was not because, "I was scared of court, or anything like that. I was really in bad shape."

Later, on his examination in the bankruptcy court, he said that he had told the attorney for the insurance company on this occasion that, "I had a fight and my face was all boogered up, that is the reason I did not show up."

He then proceeded:

"I stated to Mr. Keesee [attorney for the insurance company] probably the reason I was not in Court."

"Q. What was the reason? A. I had had a fight and got kind of boogered up, was not presentable in court.

"Q. . . . You say the whole substance of your affidavit was that you had been in a fight and pretty badly bunged up, and just didn't want to appear? A. That is right.

"Q. That is what you said to them? A. Yes, sir."

We have here a virtual admission that his absence was conscious and intentional.

■ We are of opinion that the determinative test of the reasonableness of the excuse of this defendant for his absence from court, is whether this excuse presented to

the trial judge would have been justly entitled to favorable consideration upon a motion for a new trial, the absence of *the defendant himself* being the sole ground of the motion.

Analyzing this "excuse" what have we? A man of family, intelligence and experience, evidenced by the manner of his testimony and by his employment as an automobile salesman in Memphis, involved in an automobile accident in which a guest who was injured is suing him for $25,000 damages, is so disregardful of his obligation to himself, his family and his insurer to defend this claim, the justice of which he denies, that he deliberately went on a "drinking party" on Saturday night, got into a fight and got "boogered," and then, not considering himself presentable to attend the trial he well knew had been set for Monday, secrets himself several days and nights away from his home, with friends at a trailer court, where he could not be located, meanwhile continuing to drink, as he testifies.

This was the substance of the "excuse" with which attorneys for the insurance company were furnished for the failure of the defendant in this important case to attend the trial. Conceding that if, on the calling of the case for trial, counsel had been informed by the defendant of his unfit physical condition, even though the outcome of a drunken spree on which he had intentionally entered, they might perhaps have induced an indulgent court to defer the hearing, we are not of opinion that any court, in the exercise of reasonable discretion, could have been expected to give favorable consideration to an application, after the expense and time of a trial before a jury, rested on such questionable and belatedly presented grounds. The rules governing continuances, and more particularly new trials, make no provision for recognition

of voluntary intoxication and consequent absence of *a defendant* as a sufficient ground. The procedure of courts of justice may not be so trifled with.

 As before stated, when the insured failed to attend the trial on the day set with his knowledge he breached the express condition precedent of his insurance contract which required this of him and thereby discharged his insurer. Assuming, as we do, that the insured might have revived his rights by presenting to his insurer, within the lawful time limit, an excuse for his breach, which would have afforded his insurer a reasonable opportunity to undo the effects of his breach, and present a defense against the recovery, we are constrained, as above indicated, to the conclusion that he failed so to do. The judgment thereupon became final, without fault, waiver, or neglect of the insurer and all liability of the insurer was extinguished. And, as we have seen, the rights of the complainant rise no higher than those of the insured.

 In the deposition of Hampton, read on the trial of the instant case, given months after his explanation above set out had been made to the representatives of the insurance company, it appears that he somewhat changed his statement and explanation of his absence from the trial, in that he therein stated, in substance, that, as the result of his drinking and of a blow received on the head by some unknown party, he did not know where he was until Tuesday afternoon, and, therefore, was unable to attend the trial, or pay any attention to the matter. Conceding, but not deciding, that this amounts to convincing evidence that he was prevented from attending the trial on Monday, or reporting to counsel, by an unforeseen injury which rendered him practically unconscious, which appears to be the theory of counsel for Miss Partridge,

adopted by the Court of Appeals, and that this constituted a reasonable lawful excuse for his absence, we are not of opinion that this evidence is relevant to the determinative issue. The rights and obligations of the insurance company must be determined by the showing of excuse made to its representatives before the expiration of the limit within which a new trial might have been applied for, before opportunity for reopening of the case had finally expired. Perhaps a failure to regard this distinction accounts for the decision reached by the Court of Appeals.

We do not find in the notes taken and transcribed of the explanation given by Hampton to the attorneys for the insurance company, from which we have heretofore quoted, anything to the effect that he was seriously injured and rendered and remained unconscious during the days of his absence and visit to friends in a trailer court.

A new trial could not have been obtained based on the explanation then given of *the defendant's* absence. That he later testified that his actual condition was more serious, with less mental capacity and accountability, is wholly immaterial.

We have referred to the contractual provision for co-operation, which includes attendance at the trial, as being a condition precedent which, when breached by unexplained or unexcused failure to attend, terminates the liability of the insurer. The opinion in the leading New Hampshire case of *Glens Falls Indemnity Co.* v. *Keliher,* 88 N. H. 253, 187 A. 473, 477, quotes with approval the following from the opinion of CARDOZO, J., in *Coleman* v. *Casualty Co.,* 247 N. Y. 271, 160 N. E. 367, 72 A. L. R. 1443, cited with approval in our *Horton case* above quoted from:

. "When the condition was broken, the policy was at an end, if the insurer so elected. The case is not one of the breach of a mere covenant, where the consequences may vary with fluctuations of the damage. There has been a failure to fulfill a condition upon which obligation is dependent."

So, in *Eakle v. Hayes,* 185 Wash. 520, 55, P. (2d) 1072, 1073, the Court said that the insured's "failure to attend the trial and there disclose the facts known to him regarding the accident was a breach of his contract of insurance and therefore barred any recovery on the policy by him." And further: "No recovery could, therefore, be had against the insurer for any judgment obtained against the insured, unless the insurer had waived the breach, or was in some way estopped to assert it."

. This holding is too well established to need further citation in support. But, while no waiver or estoppel appears, we are here concerned with the application to be given, on the facts of the instant case, as before noted, to an exception, in the nature of days of grace, which has been recognized when it appeared that the failure to attend the trial was wholly involuntary, not the result of manifest indifference, or negligence or misconduct. In such cases the conclusive effect of a breach may be avoided by the prompt showing of a reasonable excuse, within the time reserved to the insurer, by legal procedure to reopen the case and present defense. We have discussed this issue as affected by the proof in the instant case on this point.

It is said for the respondent in this Court that there has been a concurrent finding of the two lower Courts on this question, both holding that the insured did not appear at the trial because he had been struck on the head by some unidentified person on Saturday evening

and rendered unconscious and remained unconscious, or irrational, until Tuesday afternoon following, and for this cause was unable to know of or attend the trial on Monday. This concurrent finding of fact binding on this Court, it is urged, supports the conclusion of reasonable excuse reached by the Court of Appeals. But this argument and holding overlooks a material distinction we have before pointed out. This "concurrent finding" is made upon the testimony of the insured given at the trial before the Chancellor (quoted from at length in the reply brief for respondent), which is materially different, as we conceive and heretofore noted, from the version by way of explanation given by the insured to the attorneys for the insurer at the time when they might have taken steps to re-open the case, and this was the decisive occasion. What the facts reasons, or excuses were long after shown to be by testimony on the trial, cannot be given determinative consideration.

When reporting to the attorneys, the insurer made no such statement as to the assault upon him, or as to his condition, as we have recited above from the finding of the chancellor. We have reviewed, and as fairly as we have been able, reproduced, what was then said and the reasons by way of explanation and excuse Hampton then gave for his failure to attend the trial. Repetition is uncalled for.

We have examined the cases referred to by counsel for respondent and have otherwise searched the authorities, but have discovered no case on all fours, alike on its facts, to that before us. The principles announced are as above set forth and are illustrated in a number of cases quoted from by diligent counsel for respondent. In more than one of these cases a showing of "manifest indifference" is recognized as the equivalent of a refusal to co-operate. It can hardly be said that "indifference"

was not manifested by the course of conduct of the insured. Indeed, indifference seems to be indicated by his responses to some interrogations. For example, when attorney Keesee sought to explain to him the legal situation and his contractual obligations he replies at one place, "I am in the middle. I just don't know." And, again, when Keesee read to him the condition requiring co-operation, he said, "I am behind the eight balls, now, is that right?" The implication seems plain that his was a middle of the road attitude in the litigation, a difficult one, despite the fact that he is the defendant in the action and bound to co-operate in good faith in the defense.

. Many of the cases referred to in the briefs deal with the effect of failure in various respects to co-operate such as, full disclosure of information, delivery of material documents or records, making of false and misleading statements, repudiation on the stand of statements previously made to the insurer, etc. However, here the only ground of breach relied on is the failure to attend the trial, where the insured, his presence being material, "promised to be present at the trial, but failed to appear and could not be found on diligent search and inquiry." This is generally held to constitute a breach of the co-operation condition. 29 Am. Jur., p. 602; 98 A. L. R. 1477.

While it is held in some cases that a mere showing of absence from the trial does not of itself conclusively establish a breach of the obligation to co-operate, the cases agree that where there is proof of a request for attendance and notice of the time of trial, refusal or failure to attend constitutes a breach and, unless waived, absolves the insurer from liability. This is the substance of the holdings in the cases annotated in 72 A. L. R., pp. 1469 et seq., and 98 A. L. R., pp. 1476 et seq.

While on the special facts of some cases absence from the trial has been excused, we are cited to no case, and have found none, where, having full notice of the trial and having been requested to attend and having promised to do so, and being in the immediate locality, a defendant eye witness of the accident and party to it, failed to attend and a recovery has been allowed on the policy. Indeed, we have found no case where the ''excuse'' relied on was of the character here offered; no case where the absence was the result of intoxication, or of an injury incident thereto.

Nor, it may be added, have the courts heretofore been called upon to determine the materiality of the element of time as affecting the availability of an excuse for failure to cooperate in compliance with the contract condition under consideration.

Our conclusion is, as we have indicated, that, when fairly analyzed, the ''excuse'' given by the insured for his absence was insufficient and failed of being so reasonable as to have afforded an effective or timely basis for an application for a re-opening and re-hearing of the case, and that, therefore, no obligation arose on the part of the insurer to waive the breach of the condition which had theretofore taken effect.

The decree of the Court of Appeals is reversed and the suit dismissed.