RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION: 2000 FED App. 0267P (6th Cir.)
File Name: 00a0267p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

_____

GEORGE S. TALLEY,
     *Plaintiff-Appellant,*

     *v.*

STATE FARM FIRE AND
CASUALTY COMPANY;
HOMESIDE LENDING, INC.,
     *Defendants-Appellees.*

No. 98-6260

Appeal from the United States District Court
for the Western District of Tennessee at Memphis.
No. 97-02639—Bernice B. Donald, District Judge.

Submitted: June 21, 2000

Decided and Filed: August 10, 2000

Before: RYAN, SILER, and CLAY, Circuit Judges.

_____

**COUNSEL**

**ON BRIEF:** Robert A. Wampler, WAMPLER & PIERCE, Memphis, Tennessee, for Appellant. Russell E. Reviere, Bradford D. Box, RAINEY, KIZER, BUTLER, REVIERE & BELL, Jackson, Tennessee, for Appellees.

1

———————————

**OPINION**

———————————

CLAY, Circuit Judge.  Plaintiff, George S. Talley, appeals the judgment granting a motion for judgment as a matter of law under FED. R. CIV. P. 50 to Defendants, State Farm Fire and Casualty Company and Homeside Lending, Inc., (collectively "State Farm").  Talley commenced this action to recover under an insurance policy issued by State Farm for losses he sustained in a fire.  As an affirmative defense, State Farm asserted that Talley's refusal to submit to an examination under oath constituted a breach of the terms of the insurance policy.   Initially, State Farm moved for summary judgment pursuant to FED. R. CIV. P. 56 which was denied by the district court.  The case proceeded to trial and following the close of Talley's case-in-chief, State Farm moved for judgment as a matter of law under Rule 50.  The district court granted the motion, finding as a matter of law that Talley breached the terms of the insurance policy.  For the following reasons, we **VACATE** the judgment of the district court and **REMAND.**

## I.  Facts

On December 15, 1996, while Talley's property was insured under a State Farm policy, a fire destroyed all of his personal property located on the premises. On December 26, 1996, State Farm adjuster Todd Inman took a recorded statement ("the statement") from Talley.  At the time the statement was being taken, Inman explained to Talley the purpose of the statement.  Additionally, Inman informed Talley that it would be necessary for Talley to submit to a sworn examination under oath.[1]   While the statement was

———————————

[1]The insurance policy provided in relevant part as follows:
Your duties after loss.  After a loss to which this insurance may apply, you shall see that the following duties are performed:

being taken, Inman asked Talley various questions concerning his inheritance from his father. Talley refused to provide any information to the questions concerning the inheritance from his father. Inman informed Talley that the refusal to provide the information violated the duty to cooperate under the terms of the policy.

Shortly thereafter, Russell E. Reviere, State Farm's counsel, scheduled Talley's examination under oath and requested that Talley provide various information at the examination. Due to a scheduling conflict on Talley's part, Talley's examination was rescheduled for March 21, 1997. On March 21, 1997, Robert A. Wampler, Talley's attorney, appeared on the record and informed all parties present that Talley would not submit to the examination. Wampler explained that his client was unwilling to provide the sworn statement because of an ongoing criminal investigation of the fire and its cause.[2] On June 27, 1997, Talley was informed by State Farm that his claim under the policy was denied. At trial, Talley acknowledged his refusal to submit to an examination under oath. He stated that he would not give the statement under oath unless State Farm would guarantee that it would not

---

    (d).
    3.   Submit to and subscribe, while not in the presence of any
           other insured:
           a.    Statements; and
           b.    Examinations under oath; . . .
(J.A. at 49.)

[2]The following statement was made by Wampler:
George Talley's statement was set to be taken at 1:30, and he is not going to give his statement today to you because of what appears to be a pending arson investigation and the obligation of the insurance company to turn their investigation over to law enforcement officials under the Tennessee Code, and, therefore, he's declined to give a statement at this point. He's given one statement. He's not going to give a statement under oath at this point.
(J.A. at 73.)

share the information with law enforcement officials or others.

## II. Discussion

Cooperation clauses in liability policies have been universally held to be valid. *See Horton v. Employers' Liab. Assur. Corp.*, 164 S.W.2d 1016, 1017 (Tenn. 1942). "The right of the insurer to take and the obligation of [an insured] to give sworn statements in accordance with the terms of the policy is not questioned. Fire policies . . . almost universally require that the insured cooperate with the insurer in the investigation of the fire as a condition precedent to performance by the company to indemnify the insured for his loss." *Shelter Ins. Co. v. Spence,* 656 S.W.2d 36, 38 (Tenn. Ct. App. 1983).

The reason for including a cooperation clause in the policy and for conducting examinations pursuant to it is obvious enough. The company is entitled to obtain, promptly and while the information is still fresh, "all knowledge, and all information as to other sources and means of knowledge, in regard to the facts, material to their rights to enable them to decide upon their obligations, and to protect them against false claims. . . ."

*Id*. at 38 (quoting *Claflin v. Commonwealth Ins. Co.*, 110 U.S. 81, 94-95 (1884)). Moreover, Tennessee courts view these clauses as conditions precedent and, in the absence of waiver or estoppel, hold that a breach of the clause substantially affecting the insurer's interests constitutes a complete defense to liability under the policy. *See Pennsylvania Ins. Co. v. Horner*, 281 S.W.2d 44, 46 (Tenn. 1955); *Hartford Accident & Indem. Co. v. Partridge*, 192 S.W.2d 701, 702-03 (Tenn. 1946).

On appeal, Talley argues that the district court erred by granting State Farm's Rule 50 motion. Specifically, Talley contends that State Farm was required to show that it was prejudiced by Talley's failure to submit to an examination

Ct. App. Jan. 28, 2000) (finding a requirement of prejudice to be a logical extension of *Alcazar* in the submission of suit papers); *see also State Auto Ins. Co. v. Bishop*, No. M1998-00900-COA-R3-CV, 2000 WL 279940, at *6 (Tenn. Ct. App. Mar. 16, 2000) (discussing prejudice requirement). We may not disregard the decisions of a state appellate court unless we are convinced by other authority that the Tennessee Supreme Court would decide otherwise, *see Meridian,* 197 F.3d at 1181; *Dinsmore Instrument Co. v. Bombardier, Inc.*, 199 F.3d 318, 320 (6th Cir. 1999), irrespective of whether a state appellate decision is published or unpublished. *See Puckett v. Tennessee Eastman Co.*, 889 F.2d 1481, 1485 (6th Cir. 1989). The weight of Tennessee law seems to indicate a clear trend towards a showing of prejudice.

We therefore conclude that a showing of prejudice is required, under the circumstances of this case, before State Farm can deny Talley's claim as a result of his refusal to submit to a sworn examination. Having concluded that a showing of prejudice is required, there is a presumption that State Farm, the insurer, was prejudiced by the failure of Talley to cooperate by submitting to an examination under oath. *See Hutchinson*, 15 S.W.2d at 818 ("breach of a notice provision establishes a presumption that the insurer was prejudiced by the delay"); *Alcazar*, 982 S.W.2d at 856. However, a plaintiff can rebut the presumption of prejudice with competent evidence. *See Hutchinson*, 15 S.W.2d at 818. Accordingly, we **VACATE** the district court's judgment and **REMAND** this case to the district court so as to allow Talley the opportunity to rebut the presumed prejudice incurred by State Farm.

## III. Conclusion

For the foregoing reasons, we **VACATE** the district court's judgment and **REMAND** this case to the district court for further proceedings consistent with this opinion.

insurer, and the insured has little, if any bargaining power. With both types of policies the insurer would receive a windfall due to a technicality if there were a forfeiture without there being any prejudice to the insurer.

15 S.W.3d at 817. (internal quotation marks and citations omitted). The supreme court concluded that "for purposes of deciding whether prejudice to the insurer should be required before a policy is forfeited based on breach of a notice provision, there is no significant difference between an uninsured motorist policy and a general liability policy." *Id.* at 817.

Recognizing that these cases do not specifically apply to the fire insurance policy context, we nevertheless believe that it would logically follow, in light of *Alcazar* and *Hutchinson*, that a showing of prejudice is required before an insurance provider is permitted to defeat liability in the context of a fire insurance policy claim. Here, the case involved the breach of a condition precedent in that Talley refused to submit to an examination under oath. *Alcazar* and *Hutchinson* expressly hold that the modern approach is to be applied in cases where a condition precedent has not been satisfied. Although the modern approach thus far has not been applied in the fire insurance policy context, our interpretation of Tennessee law leads us to believe that the Tennessee Supreme Court, if faced with the issue, would require a showing of prejudice in the instant case. *See Managed Health Care Assocs. Inc. v. Kethan,* 209 F.3d 923, 927 (6th Cir. 2000) (holding that where highest court has not ruled on the issue, the court of appeals must decide the issue as it believes the state's highest court would decide the issue); *C & H Entertainment Inc. v. Jefferson County Fiscal Court*, 169 F.3d 1023, 1025 (6th Cir. 1999).

Moreover, other persuasive authority leads us to conclude that a showing of prejudice is required. *See Anthony v. Long*, No. E1998-00747-COA-R3-CV, 2000 WL 115981, *6 (Tenn.

under oath. In support of Talley's argument, he primarily relies upon *Shelter Insurance Co. v. Spence,* 656 S.W.2d 36 (Tenn. Ct. App. 1983); *Allstate Insurance Co. v. Auto Owners Insurance Co. Inc.,* No. 03A01-9706-CH-00225, 1998 WL 102075, at *1 (Tenn. Ct. App. Feb. 27, 1998) (unpublished); and *Thaxton v. Allstate Insurance Co.*, No. 87-251-II, 1988 WL 23922, at *1 (Tenn. Ct. App. Mar. 18, 1988) (unpublished) for the proposition that State Farm must show prejudice. State Farm contends that no showing of prejudice is required.

In granting Defendant's Rule 50 motion, the district court reasoned as follows:

Given the circumstances around this case, the plaintiff says that State Farm was not prejudiced. And I don't find that they have shown any prejudice, but I also find that there is no requirement that they show prejudice in this case. I believe State Farm had a sufficient, reasonable and justified business judgment for pursuing this issue further in light of what I have heard, so I don't find that their actions were unreasonable. As I said before, I don't find that under the prevailing law or under the statute there has to be a showing of prejudice or reasonableness.

(J.A. at 128-29.)

Because the district court was required to "apply state law in accordance with the then controlling decision of the highest state court," *Bailey Farms, Inc. v. NOR-AM Chemical. Co.*, 27 F.3d 188, 191 (6th Cir.1994), the district court properly concluded that Tennessee law did not require Defendant to demonstrate prejudice. *See Horner*, 281 S.W.2d at 44; *Hartford*, 192 S.W.2d at 701; *Horton*, 164 S.W.2d at 1016; *Goodner v. Occidental Fire & Cas. Co.*, 440 S.W.2d 614, 617 (Tenn. Ct. App. 1969); *see also Allstate Indem. Co. v. Fifer*, 47 F.Supp.2d 913 (W.D. Tenn. 1998) (finding no showing of prejudice required under Tennessee state law where condition

precedent breached). However, intervening authority from the Tennessee Supreme Court, *Alcazar v. Hayes*, 982 S.W.2d 845 (Tenn. 1998) and *American Justice Insurance Reciprocal v. Hutchinson*, 15 S.W.3d 811 (Tenn. 2000), requires a showing of prejudice in order for an insurance company to defeat liability, even if the insured individual has failed to abide by the terms of the policy.[3]

In a diversity action involving an insurance contract, a federal court applies the substantive law of the forum state. *See Erie R.R. Co. v. Tompkins*, 304 U.S. 64 (1938); *Equitable Life Assur. Soc. of U.S. v. Poe*, 143 F.3d 1013, 1016 (6th Cir. 1998). A federal court must follow the decisions of the state's highest court when that court has addressed the relevant issue. *See Meridian Mut. Ins. Co. v. Kellman*, 197 F.3d 1178, 1181 (6th Cir. 1999). Although the publication of *Alcazar* and *Hutchinson* occurred after the district court issued judgment granting State Farm's Rule 50 motion, it is well settled that "a judgment of a federal court ruled by state law and correctly applying that law as authoritatively declared by the state courts when the judgment was rendered, must be reversed on appellate review if in the meantime the state courts have disapproved of their former rulings and adopted different ones." *Huddleston v. Dwyer*, 322 U.S. 232, 236 (1944); *accord Vandenbark v. Owens-Illinois Glass Co.*, 311 U.S. 538, 543 (1941); *Awrey v. Progressive Cas. Ins. Co.*, 728 F.2d 352, 354 (6th Cir. 1984) (holding that the court of appeals in applying state law on appeal of a diversity action must apply law of the state as it existed at the time of its decision rather than as it stood at the time the case was decided in district court). Thus, an intervening state decision must be given its full effect and treated as though the decision existed during the pendency of the action before the district court. *See Huddleston*, 322 U.S. at 236 (holding that until the

---

[3]The district court entered its judgment on July 30, 1998. The Tennessee Supreme Court issued its opinion in *Alcazar* on Dec. 21, 1998, approximately five months after the district court entered judgment.

case is no longer *sub judice*, federal courts must apply state law in accordance with the then controlling decision of the highest state court). Therefore, we must apply both *Alcazar* and *Hutchinson* to this case, despite the fact that neither decision was available to the district court at the time it rendered its decision.

In *Alcazar*, the Tennessee Supreme Court considered whether an uninsured motorist policy is automatically forfeited when the insured does not comply with the notice provision of the insurance policy. The supreme court abandoned the traditional approach, which recognized that notice was a condition precedent to recovery under a policy and required automatic forfeiture without a showing of prejudice to the insurer. 982 S.W.2d at 849-52. In adopting the modern approach requiring a showing of prejudice when a condition precedent has been violated, the *Alcazar* court articulated three rationales governing its ruling on the issue: "1) the adhesive nature of insurance contracts; 2) the public policy objective of compensating tort victims; and 3) the inequity of the insurer receiving a windfall due to a technicality." *Id.* at 850. Ultimately, the supreme court concluded that an insurer must demonstrate prejudice. *Id* at 856.

In *Hutchinson*, the Tennessee Supreme Court was presented with the issue of whether a general liability insurance policy is automatically forfeited when the insured fails to comply with the policy's notice provision, regardless of whether the insurer has been prejudiced by the delay. 15 S.W.3d at 815. Reiterating the same three rationales that it observed in *Alcazar,* the *Hutchinson* court extended the holding of *Alcazar* to liability insurance policies. The *Hutchinson* court, in comparing the underinsured motorist policy and the general liability insurance policy stated as follows:

Both types of insurance policies are contracts of adhesion, in that they are form contracts drafted by the