The majority then attempts to distinguish *Moore* on the basis that the policy in *Moore* was a UM/UIM policy and that the plaintiff in *Moore* was a named insured.  The majority suggests that this case is different from *Moore* because this case involves a policy where the UM/UIM coverage was created by operation of law and because the plaintiff here was not a named insured but was only an insured because of an ambiguity in the definition of the named insured.  It is unclear why the majority draws these distinctions.  Neither *Moore* itself nor any other Ohio case or statute has limited *Moore*'s application to cases involving named insureds or express UM/UIM coverage.  I find the majority's decision to restrict *Moore* in this manner to be completely inconsistent with our charge to follow state law as it is given to us by the state courts.  I therefore respectfully dissent.

---

bodily injured insured from collecting UM/UIM benefits under the insured's own policy.  In the case at bar, unlike *Moore*, . . . appellant is attempting to deny coverage to appellee because he already received the limits of liability from the tortfeasor's insurer and because he is not entitled to receive additional compensation for his non-bodily injuries.").  As the issue in this case *is* an outright denial of coverage to a spouse for her losses, these three courts would clearly find *Moore* applicable here.

RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION:  2003 FED App. 0080P (6th Cir.)
File Name:  03a0080p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

_____

ERIN E. LAWLER,
Individually, and as the
Administratrix of the Estate of
Jeremy Lawler,
                              *Plaintiff/*
*Cross-Claimant-Appellant,*

                    *v.*

FIREMAN'S FUND INSURANCE
COMPANY, et al.,
                              *Defendants/*
                    *Third-Party Plaintiffs,*

STATE FARM INSURANCE
COMPANY,
                              *Third-Party/*
                              *Cross-Claim*
                    *Defendant-Appellee.*

No. 01-3932

Appeal from the United States District Court
for the Northern District of Ohio at Akron.
No. 01-00503—James Gwin, District Judge.

Argued:  January 29, 2003

1

Decided and Filed:  March 17, 2003

Before:  GUY and MOORE, Circuit Judges; BECKWITH,
District Judge.[*]

_____

**COUNSEL**

**ARGUED:**    Kenneth  M.  Zerrusen,  ARONSON  &
ASSOCIATES, Akron, Ohio, for Appellant.   Thomas J.
Wilson,    COMSTOCK,    SPRINGER    &    WILSON,
Youngstown, Ohio, for Appellee.  **ON BRIEF:** Stanley P.
Aronson,  ARONSON  &  ASSOCIATES,  Akron,  Ohio,
Kenneth  L.  Gibson,  WEICK,  GIBSON  &  LOWRY,
Cuyahoga Falls, Ohio, for Appellant.   Thomas J. Wilson,
COMSTOCK, SPRINGER & WILSON, Youngstown, Ohio,
Gordon  Dale  Arnold,  FREUND,  FREEZE  &  ARNOLD,
Dayton, Ohio, for Appellee.

GUY,  J.,  delivered  the  opinion  of  the  court,  in  which
BECKWITH,  D.  J.,  joined.    MOORE,  J.  (pp.  18-20),
delivered a separate dissenting opinion.

_____

**OPINION**

_____

RALPH  B.  GUY,  JR.,  Circuit  Judge.    Plaintiff,  Erin  E.
Lawler, individually and as administratrix of the estate of her
husband, Jeremy Lawler, appeals from the district court's
order denying her motion for partial summary judgment and
granting  summary  judgment  to  the  cross-claim/third-party
defendant, State Farm Fire & Casualty Company.  Plaintiff's
husband was driving home from work when he was fatally
injured in an automobile accident caused by a negligent third

_____

[*] The Honorable Sandra S. Beckwith, United States District Judge for
the Southern District of Ohio, sitting by designation.

the  relevant  statute  "does  not  permit  an  insurer  to  limit
uninsured  motorist  coverage  in  such  a  way  that  an  insured
must  suffer  bodily  injury,  sickness,  or  disease  in  order  to
recover  damages  from  the  insurer."   *Moore*,  723  N.E.2d  at
102.

The  facts  of  this  case  are  identical  to  those  in  *Moore*  in
every  relevant  respect.    The  majority  opinion  attempts  to
distinguish *Moore* by saying that it only applies "'when the
insurer attempts to prohibit a non-bodily injured insured from
collecting [uninsured/underinsured motorist] benefits under
the insured's own policy.'"  Maj. op. at 17 (citation omitted).
This distinction is well supported in Ohio law, but it does not
distinguish  *Moore*  —  in  fact,  it  makes  this  case
indistinguishable from *Moore*, for this case also involves a
non-bodily  injured  insured  who  is  attempting  to  collect
uninsured/underinsured motorist's benefits under her own
policy.  The cases that the majority cites do not help its case.
They are all decisions holding that, even after *Moore*, insurers
can  still  limit  recovery  to  a  per-person  limit  stated  in  the
policy.  These cases are inapplicable to the issue here, which
is whether Erin Lawler can recover at all.[1]

_____

[1] In fact, the cited cases not only do not help the majority's position,
they undermine it.  They all explicitly acknowledge that while *Moore* does
not invalidate per-person limits in insurance policies (which is the issue
in the cited cases), it does invalidate an insurer's attempt to deny coverage
outright to family members. *See Post v. Harber*, No. 00CA541, 2001 WL
243303, at *12 (Ohio Ct. App. Feb. 16, 2001) ("In case at bar, unlike
*Moore*, appellants have not argued that the insurers are attempting to
outright deny coverage to the parents for their loss of consortium claims.
Rather, the insurers are attempting to limit the liability to the per person
limits specified in the policies and as permitted by R.C. 3937.18(H) and
3937.44."); *Davidson v. Uhrig*, No. 00CA2543, 2001 WL 772228, at *5
(Ohio  Ct.  App.  June  28,  2001)  ("In  the  case  at  bar,  unlike  *Moore*,
appellants have not argued that appellee is attempting to outright deny
coverage to the children for their loss of consortium claims.  Rather,
appellee  is  attempting  to  limit  the  liability  to  the  per  person  limits
specified in the policies and as R.C. 3937.18(H) and 3937.44 permit.");
*Bentley v. Progressive Ins. Co*, No. 02CA10, 2002 WL 31681997, at *6
(Ohio Ct. App. Nov. 26, 2002) ("A review of *Moore* reveals that it applies
in situations only when the insurer attempts to prohibit completely a non-

———————

**DISSENT**

———————

KAREN NELSON MOORE, Circuit Judge, dissenting. After determining that Erin Lawler is an insured under her employer's insurance policy and entitled to UM/UIM insurance coverage, the majority goes on to hold that she cannot recover for the losses that she suffered. As I believe this aspect of the opinion to be inconsistent with established Ohio law on the subject, I respectfully dissent.

After careful examination, this court properly concludes that the policy at issue is a motor vehicle liability policy, that UM/UIM coverage arose by operation of law for those insured by the policy, that Erin Lawler was such an insured, and that she was therefore entitled to UM/UIM coverage. The opinion then abruptly concludes by stating that since Jeremy Lawler was not an insured under the policy, Erin Lawler cannot recover in her own right for the losses she has suffered.

Such a conclusion directly contradicts law that is clearly laid out for us by the Ohio Supreme Court in *Moore v. State Automobile Mutual Insurance Co.*, 723 N.E.2d 97, 101-02 (Ohio 2000). As the majority explains, the Ohio Supreme Court in *Moore* considered the claim of a parent who sought to recover damages under her own insurance policy for her son's death in an automobile accident caused by an uninsured motorist. As parents (like spouses) are presumed to recover damages as a result of a child's (or spouse's) wrongful death under Ohio law, *see* OHIO REV. CODE ANN. § 2125.02(A)(1), Alice Moore was allowed to recover under her own policy for the damages she suffered in her son's death, even though her son was not an insured under the policy. The Ohio Supreme Court held that such a claim was not only valid, but that it was valid even in spite of contractual language that was meant to prevent insureds who were not themselves physically injured from recovering. The Ohio Supreme Court held that

party. While a number of insurance policies were called into play, this appeal involves plaintiff's claim to underinsured motorist (UIM) benefits under a general liability insurance policy issued to plaintiff's employer, Guiseppes Pizza, by State Farm.

While that policy did not expressly provide for UIM coverage, plaintiff contends that such coverage arose by operation of law under former Ohio Revised Code § 3837.18, as that provision has been interpreted by the Ohio Supreme Court in *Scott-Pontzer v. Liberty Mutual Fire Insurance Co.*, 710 N.E.2d 1116 (Ohio 1999), *Ezawa v. Yasuda Fire & Marine Insurance Co.*, 715 N.E.2d 1142 (Ohio 1999), and *Selander v. Erie Insurance Group*, 709 N.E.2d 1161 (Ohio 1999). Plaintiff contends the district court erroneously found that (1) plaintiff was not an insured under the policy, (2) the policy was not an "automobile liability policy" for purposes of § 3937.18, and (3) the "other insurance" provisions in the policy applied to UIM coverage arising by operation of law. After review of the record and the applicable law, we affirm the entry of summary judgment in favor of State Farm.

**I.**

On April 19, 1997, plaintiff's husband was fatally injured in an automobile accident as he was driving his own car home from his job at Modern Tool & Dye Products, Inc. (MTD). The accident was caused by the negligence of Mark Busser, who also died from injuries received in the accident. Busser had an automobile liability policy with State Farm, which paid $50,000 to plaintiff. Jeremy Lawler had his own automobile insurance policy with State Farm, which included up to $100,000 in UIM coverage. State Farm paid plaintiff an additional $50,000 under this policy, exhausting its limits. There is no dispute that these sums did not fully compensate the estate for its loss.

Plaintiff commenced this action to recover UIM benefits under two insurance policies purchased by MTD, her husband's employer; specifically, a $2 million business automobile policy issued by Fireman's Fund Insurance

Company, and a $10 million umbrella liability policy issued by St. Paul Fire and Marine Insurance Company. In turn, Fireman's Fund brought a third-party claim against State Farm seeking contribution under the business liability policy issued to Guiseppes Pizza, Erin Lawler's employer. With leave from the court, plaintiff filed a cross-claim against State Farm under the same policy.

After mediation and while a number of motions for summary judgment were pending, plaintiff settled with the insurers of her husband's employer. Fireman's Fund paid $900,000 and assigned its third-party claim to plaintiff. St. Paul settled with plaintiff for $40,000. Having recovered $1,040,000 in insurance proceeds, the only claim remaining was for UIM coverage under the State Farm policy issued to Guiseppes Pizza. On cross-motions by the parties, the district court denied plaintiff's motion for partial summary judgment in her favor and granted summary judgment to State Farm. *Lawler v. Fireman's Fund Ins. Co.*, 163 F. Supp.2d 841 (N.D. Ohio 2001). This appeal followed.

## II.

The district court's grant of summary judgment is reviewed *de novo*. *Smith v. Ameritech*, 129 F.3d 857, 863 (6th Cir. 1997). Summary judgment is appropriate when there are no issues of material fact in dispute and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c). The facts in this case are undisputed and the district court's determination of state law presents a purely legal question, which we review *de novo*. *Salve Regina College v. Russell*, 499 U.S. 225, 231 (1991) (state law determinations reviewed *de novo*); *United Nat'l Ins. Co. v. SST Fitness Corp.*, 182 F.3d 447, 449 (6th Cir. 1999) (construction of an insurance contract under Ohio law is matter for the court).

Plaintiff claims at the outset that the district court disregarded and refused to apply Ohio law, quoting from the district court's criticisms of the Ohio Supreme Court's decisions interpreting Ohio Revised Code § 3937.18. State Farm, on the other hand, maintains that the district court

those cases. In fact, as one Ohio court explained, the intermediate appellate courts "have found *Moore* applicable in situations only when the insurer attempts to prohibit a non-bodily injured insured from collecting [uninsured/underinsured motorist] benefits under the insured's own policy." *Post v. Harber*, No. 00CA541, 2001 WL 243303, *11 (Ohio Ct. App. Feb. 16, 2001) (citing cases), *reversed on other grounds*, 751 N.E.2d 479 (Ohio 2001). *See also Davidson v. Uhrig*, No. 00CA2543, 2001 WL 772228, *8 (Ohio Ct. App. June 28, 2001) (citing cases); *Bentley v. Progressive Ins. Co.*, No. 02CA10, 2002 WL 31681997 (Ohio Ct. App. Nov. 26, 2002). In each of these Ohio cases, as in *Moore* and *Sexton*, the non-bodily injured insured was the named insured on his or her own automobile liability policy. We found no cases applying the rule outside this context. As this is the view of the Ohio court of appeals and the Ohio Supreme Court has given no indication that it would extend *Sexton/Moore* beyond its facts, we find that *Moore* does not apply to plaintiff's claim for benefits when UM/UIM coverage arises by operation of law.

Having found that the district court erroneously relied on the scope-of-employment limitation, we nonetheless affirm the district court's grant of summary judgment in favor of State Farm on both the cross-claim and the third-party claim.

**AFFIRMED.**

§ 3837.18. We are not persuaded that the Ohio courts would apply *Moore* when UIM coverage has been found to arise by operation of law.

In both *Moore* and *Sexton*, the Court was presented with a case in which a parent, whose child had been killed in an automobile accident involving an uninsured vehicle, sought to recover uninsured motorist benefits under an automobile liability policy under which the parent was the named insured. Those cases held that the language in § 3937.18, as it stood both before the 1994 amendments and as amended in 1994,[5] precluded an insurer from denying coverage to the parents on the grounds that they, as the insured, did not sustain "bodily injury."[6]

Plaintiff has failed to either articulate a basis for extending this rule to our situation, or identify any cases that have extended the holding in *Sexton* or *Moore* beyond the facts of

---

[5]This language was amended further by SB 261, effective September 3, 1997.

[6]The majority opinion in *Sexton* held that the automobile liability policy language was inconsistent with the uninsured motorist coverage mandated in § 3937.18 because the statute required coverage "for the protection of persons insured thereunder who are legally entitled to recover damages from owners or operators of uninsured motor vehicles because of bodily injury, sickness, or disease, including death, resulting therefrom." *Id.* at 558. Finding that the statute did not specify that the insured must have sustained the bodily injury, the Court held it was sufficient that the father was entitled to recover financial losses as a result of the death of his daughter. The quoted language was then amended by SB 20 to delete "resulting therefrom" and insert in its place "suffered by any person insured under the policy." In *Moore*, the Court found the amended provision was ambiguous and, invoking the underlying purpose of uninsured motorist coverage, held that the limitation of coverage to bodily injury sustained by an insured was invalid and unenforceable. Thus, a mother, who was a named insured on an automobile liability policy, was entitled to uninsured motorist benefits under the policy for losses relating to the death of her son, who was not living with her, as a result of an accident in an uninsured automobile. *See also King v. Grange Mut. Cas. Co.*, 728 N.E.2d 365 (Ohio 2000) (UIM coverage case) (reversing without opinion).

simply refused to extend those decisions to this case of first impression. Given the *de novo* nature of our review, our focus is on the district court's analysis, not its commentary, and our task is to determine whether the district court erred in its determination and application of Ohio law.

Where jurisdiction is based on diversity of citizenship, we must apply the substantive law of the forum state "in accordance with the then controlling decision of the highest state court." *Vandenbark v. Owens-Illinois Glass Co.*, 311 U.S. 538, 543 (1941); *Ziegler v. IBP Hog Market, Inc.*, 249 F.3d 509, 517 (6th Cir. 2001); *Talley v. State Farm Fire and Cas. Co.*, 223 F.3d 323, 326-27 (6th Cir. 2000). If the state's highest court has not decided the issue, the federal court must ascertain what the state law is from "all relevant data." *Bailey v. V & O Press Co.*, 770 F.2d 601, 604 (6th Cir. 1985). Relevant data includes intermediate appellate decisions, which may not be disregarded "unless [we are] convinced by other persuasive data that the highest court of the state would decide otherwise." *Puckett v. Tenn. Eastman Co.*, 889 F.2d 1481, 1485 (6th Cir. 1989); *see also Kirk v. Hanes Corp.*, 16 F.3d 705, 707 (6th Cir. 1994) (appellate decisions authoritative absent "strong showing" that state's highest court would decide differently).

Former Ohio Revised Code § 3937.18 mandated that all automobile or motor vehicle liability insurers offer an insured the opportunity to purchase UM/UIM coverage. The Ohio Supreme Court, interpreting the statute, held that absent proof that such an offer was made and rejected, UM/UIM coverage would arise by operation of law. *Gyori v. Johnston Coca-Cola Bottling Group*, 669 N.E.2d 824, 827 (Ohio 1996); *see also Linko v. Indem. Ins. Co. of N. Am.*, 739 N.E.2d 338 (Ohio 2000) (defining valid rejection). State Farm made no claim to having obtained a valid rejection of UM/UIM coverage for the business liability policy at issue.

The General Assembly amended § 3937.18 many times in recent years, often with the express intention of superceding decisions of the Ohio Supreme Court that interpreted the

statute's provisions.[1] Under Ohio law, the scope of coverage for a UM/UIM claim is governed by the statutory law in effect at the time of entering the contract. *Ross v. Farmers Ins. Group*, 695 N.E.2d 732 (Ohio 1998) (syllabus 2). In this case, State Farm issued the commercial liability policy to Guiseppes Pizza for the 12-month period beginning December 11, 1996, and ending December 11, 1997. Because the contract was entered into before the 1997 amendments adopted by House Bill (HB) 261 became effective on September 3, 1997, this dispute is governed by the statute as amended in 1994 by Senate Bill (SB) 20, effective October 20, 1994.

### A.   Motor Vehicle Liability Insurance

Until § 3937.18 was amended effective September 3, 1997, the statute did not define what constituted "an automobile liability or motor vehicle liability insurance policy" for purposes of triggering an insurer's obligation to offer UM/UIM coverage. Interpreting the 1994 version of the statute, the Ohio Supreme Court held in *Selander v. Erie Insurance Group*, 709 N.E.2d 1161 (Ohio 1999), that a commercial liability policy providing limited liability coverage for hired and nonowned automobiles used in the insured's business afforded sufficient automobile coverage to be deemed a motor vehicle liability policy subject to § 3937.18.[2]

---

[1] Effective October 31, 2001, § 3937.18 was rewritten to eliminate both the requirement of a mandatory offer of UM/UIM coverage and the possibility of UM/UIM coverage being implied as a matter of law. Stating that its purpose was to stabilize the market for automobile liability insurance in Ohio, the General Assembly specifically indicated its intention to supercede *Scott-Pontzer*, *Gyori*, *Linko*, and other decisions of the Ohio Supreme Court.

[2] Effective September 3, 1997, SB 261 added § 3937.18(L), defining "automobile liability or motor vehicle liability policy of insurance" as "(1) Any policy of insurance that serves as proof of financial responsibility, as proof of financial responsibility is defined [in the motor vehicle code] for owners or operators of the motor vehicles specifically

Consistent with *Scott-Pontzer*, the Ohio courts have rejected the argument that *Ezawa* stands for the proposition that UIM coverage arising by operation of law includes family members without regard for the definition of an insured. Rather, *Ezawa* has been followed, and implied insured status extended to family members, only when family members are included in the ambiguous definition of an insured. *See, e.g.*, *Szekeres v. State Farm Fire & Cas. Co.*, No. 02CA00004, 2002 WL 31439821 (Ohio Ct. App. Oct. 31, 2002); *Edmondson v. Premier Indus. Corp.*, No. 81132, 2002 WL 31320334 (Ohio Ct. App. Oct. 17, 2002).

In *Szekeres*, an injured plaintiff sought UIM coverage under the commercial liability policies issued to the employers of his mother and sister. Those policies defined an insured to include employees acting within the scope of their employment, and UM/UIM coverage was assumed to arise by operation of law. Because neither commercial policy defined an insured to include "family members," in contrast to the language at issue in *Scott-Pontzer* and *Ezawa*, plaintiff, as an injured son and brother, was held not to be an insured. *Szekeres*, at **5-6. Similarly, the State Farm policy expressly included employees in the definition of an insured, but that definition did not also include an employee's family members. Accepting that Erin Lawler, as an employee of Guiseppes Pizza, came within the definition of an insured without regard for whether she was acting within the scope of her employment, Jeremy Lawler was not an insured for purposes of UIM coverage under the State Farm policy issued to Erin Lawler's employer.

Finally, plaintiff asserts in her reply brief that she may recover UIM benefits in her own name as an insured under the State Farm policy even though she was not involved in the accident. Without any further elaboration, plaintiff simply cites to the Ohio Supreme Court decision in *Moore v. State Automobile Mutual Insurance Co.*, 723 N.E.2d 97 (Ohio 2000), which has been described as "resurrecting" *Sexton v. State Farm Mutual Automobile Insurance Co.*, 433 N.E.2d 555 (Ohio 1982), for cases governed by the 1994 version of

limitations in the definition of an insured when UM/UIM coverage is found to arise by operation of law. *Roberts v. Wausau Bus. Ins. Co.*, 778 N.E.2d 594, 599-600 (Ohio Ct. App. 2002); *see also*, *Kasson v. Goodman*, No. L-01-1432, 2002 WL 1800997 (Ohio Ct. App. June 7, 2002); *Butcher v. Lewis*, No. 2001CA00219, 2002 WL 571640 (Ohio Ct. App. Apr. 15, 2002), *appeal dismissed*, 770 N.E.2d 1019 (Ohio 2002); *Brodbeck v. Continental Cas. Co.*, No. L-01-1269, 2002 WL 192060 (Ohio App. Feb. 8, 2002). Accordingly, the district court erred in finding that an employee could only be an insured under the State Farm policy when acting within the scope of employment.

That said, however, this case does not present a *Scott-Pontzer* claim because in this case the insured employee, Erin Lawler, was not involved in the accident.[4] Without fleshing out her argument, plaintiff cites to *Ezawa* in an apparent effort to claim her husband was an insured under the State Farm policy. We find *Ezawa* does not apply.

In *Ezawa*, the question was whether the minor child of an employee, injured while riding in a car that was not a covered vehicle, was an insured under a commercial automobile policy that listed only the employer as the named insured. That policy, which provided UIM coverage by its terms, contained the same standard language as the *Scott-Pontzer* automobile policy defining insureds to include "You" and "If you are an individual, any family member." The intermediate appellate court held that the conditional nature of the phrase "*if* you are an individual" removed the *Scott-Pontzer* ambiguity with respect to family members of an employee. The Ohio Supreme Court reversed, without opinion, citing its decision in *Scott-Pontzer*.

---

[4] For this reason, we need not address plaintiff's contention that the district court erroneously ignored State Farm's response to her request for admissions admitting that under the authority of *Scott-Pontzer*, Erin Lawler was an insured under the State Farm policy on the date of the accident.

The district court distinguished this case on the grounds that the decedents in *Selander* were killed while in the course of partnership business. The commercial liability policy at issue in *Selander* expressly provided limited liability coverage to the named insured, the partnership, arising from the use of "hired" and "nonowned" automobiles in the course of partnership business. Two brothers, who were partners in the business, were killed in an accident involving a pickup truck owned by one of the partners and being used in the course of partnership business. Despite the possible implication that the course of employment distinction might be significant to the holding in *Selander*, subsequent Ohio Supreme Court decisions lead us to conclude that this case cannot be distinguished from *Selander* on that basis.

In *Davidson v. Motorists Mutual Insurance Co.*, 744 N.E.2d 713 (Ohio 2001), the Ohio Supreme Court distinguished *Selander* from homeowner's policies that excluded coverage for motor vehicles, except that they provided limited liability coverage for certain "motorized conveyances" not subject to motor vehicle registration laws. In finding the homeowner's policies were not automobile or motor vehicle policies, the Court explained that

the policy in *Selander* was deemed an automobile liability or motor vehicle policy *precisely because there was express liability coverage arising from the use of automobiles*. Furthermore, automobiles, unlike the vehicles listed in the homeowner's policy in this case, are subject to motor vehicle registration and are designed for and are used for transporting people on a public highway.

744 N.E.2d at 717 (emphasis added).

---

identified in the policy of insurance; (2) any umbrella liability policy of insurance . . . ." This definition was later amended, effective November 2, 1999, so that § 3937.18(L)(2) further limited the definition to include "[a]ny umbrella liability policy of insurance written as excess over one of more policies described in division (L)(1) of this section."

In *Hillyer v. State Farm Fire & Casualty Co.*, 780 N.E.2d 262 (Ohio 2002), a case arising under the 1994 version of the statute, the Ohio Supreme Court held that a residence-employee clause in a homeowner's policy does not convert that policy into a motor vehicle policy for purposes of § 3937.18.[3] Clarifying its decisions in *Selander* and *Davidson*, the Court explained that it is the *type* of coverage provided by the terms of the policy that determines whether it will be found to be a motor vehicle liability policy for purposes of the statute. In the course of the opinion, the Court provided the following insight into the rationale underlying *Selander* and *Davidson*:

> *Selander* involved a business liability policy issued to a partnership. The policy generally excluded coverage for automobiles; however, it provided some automobile liability coverage for claims of vicarious liability arising from the use of unspecified hired or nonowned vehicles used in the course of the business. Because the business policy provided some liability coverage in limited circumstances, we held that UM/UIM coverage must be provided. . . .
>
> . . . . The coverage in *Davidson* was not incidental merely because it involved recreational vehicles. Instead, it was incidental primarily because coverage of those vehicles was remote from and insignificant to the type of overall coverage the policy provided.

*Hillyer*, 780 N.E.2d. at 266-67.

The State Farm policy in this case provided coverage through an exception to the automobile exclusion for "bodily

_____

[3]The residence-employee exception extended liability coverage for injury to an employee in the course of domestic employment, which would include liability for such injuries even if they arose in an automobile accident. The Court reasoned that, in such a situation, automobile coverage would arise by virtue of the employee's employment and not because a motor vehicle was involved.

1. If you are designated in the Declarations as:

   a. an individual, you and your spouse are insureds but only with respect to the conduct of a business of which you are the sole owner;

   b. a partnership or joint venture, . . . .

   c. an organization other than a partnership or joint venture, you are an insured. Your executive officers, directors and trustees are insureds but only with respect to their duties as your officers, directors or trustees. Your stockholders are also insureds but only with respect to their liability as stockholders.

2. Each of the following are also an insured:

   a. your employees, other than your executive officers, but only for acts within the scope of their employment by you. However, no employee is an insured for:

      . . . .

      (4) **bodily injury** or **property damage** arising out of the ownership, maintenance, use or entrustment to others of any **non-owned auto** or any agent or employee of an owner of any **non-owned auto**[.]

It seems apparent that because the definition of an insured expressly included "employees," albeit only for acts within the scope of their employment, the Court in *Scott-Pontzer* was not required to find the definition to be ambiguous in order to conclude that Pontzer came within its terms.

Moreover, whatever uncertainty was spawned by the structure of the opinion in *Scott-Pontzer*, our survey of Ohio case law indicates that *Scott-Pontzer* has been interpreted to preclude an employer from relying on scope-of-employment

until *after* declaring that Pontzer was an insured under the umbrella policy, the district court reasoned that the limitation must have appeared outside the definition of an insured. Based on this inference, the district court then distinguished *Scott-Pontzer* from this case on the grounds that the State Farm policy more narrowly defined an insured to include only employees acting within the scope of their employment.

While the Ohio Supreme Court's failure to articulate the reasons for finding Pontzer was an insured makes the task of interpreting the scope of its holding more difficult, the fact that the Court specifically found Pontzer was an insured under the umbrella policy cannot be disregarded. Nor can we ignore the Court's statement that: "If we find Pontzer was not an insured under the policies, then our inquiry is at an end." 710 N.E.2d at 1118. *See Szabo v. CGU Int'l Ins.*, 227 F. Supp.2d 820, 835 (S.D. Ohio 2002) ("It is, in short, unreasonable to read *Scott-Pontzer* for the proposition that an employee who is not named, either expressly or impliedly, under her employing corporation's automobile liability policy, must nevertheless benefit from *de jure* UIM coverage on account of the insurer not having offered such to the corporate employer."); *Cox v. State Farm Fire & Cas. Co.*, No. 2001CA0017, 2002 WL 1310424 (Ohio Ct. App. June 10, 2002) (rejecting contention that UM/UIM coverage created by operation of law permits coverage not only to employees but also family members without demonstrating that the family member was also an insured).

In addition, while the Supreme Court's opinion in *Scott-Pontzer* did not quote the scope-of-employment limitation at issue under the umbrella policy, the only such provision attributed to the policy by the Ohio Court of Appeals was set forth in the definition of an insured. *See Lawler*, 163 F. Supp.2d at 855 n.7; *Scott-Pontzer*, No. 1997CA00152, 1998 WL 516303, *2 (Ohio Ct. App. Jan. 20, 1998). As plaintiff correctly points out, that definition was nearly identical to the following definition of an insured for purposes of business liability coverage under the State Farm policy:

injury or property damage arising out of the use of any non-owned auto in your business by any person other than you[.]" *Lawler*, 163 F.Supp.2d at 845 (internal quotation marks and citation omitted). Because the State Farm policy provided essentially the same limited automobile liability coverage as was provided by the commercial liability policy at issue in *Selander*, the State Farm policy was an automobile or motor vehicle liability policy triggering the obligation to offer UM/UIM coverage. Because the policy provided no UM/UIM coverage and no valid offer and rejection of such coverage was obtained, UM/UIM coverage arose by operation of law.

## B.  Insured

Challenging the district court's finding that she and her husband were not insureds under the State Farm policy, plaintiff argues that the district court misinterpreted and failed to apply Ohio law as articulated by the Ohio Supreme Court in *Scott-Pontzer* and *Ezawa*. While we do not agree with all of the district court's analysis of the *Scott-Pontzer* decision, we nonetheless conclude that neither *Scott-Pontzer* nor *Ezawa* compel a finding that plaintiff is entitled to UIM coverage.

In *Scott-Pontzer*, a surviving widow sought to recover UIM motorist benefits under two insurance policies issued to her husband's employer, Superior Dairy, after he was killed in a car accident while driving his wife's car on personal business. Superior was the named insured under a commercial automobile liability policy and an umbrella/excess liability policy. The Ohio Supreme Court defined three issues for decision: first, whether the decedent Christopher Pontzer, as an employee of Superior, was an insured for purposes of UIM coverage under these policies; second, if he was, then whether it was necessary for him to have been acting in the course of employment at the time of the accident; and third, whether the exclusions in the umbrella liability policy applied to UIM coverage arising by operation of law.

The commercial automobile policy, which provided UM/UIM coverage, defined an insured to include: "You"; "If

you are an individual, any family member"; and "Anyone else occupying a covered auto." Although Superior was the only named insured, the Court found the definition to be ambiguous and construed the policy against the insurer, reasoning as follows:

> Contrary to appellees' contentions, the policy language of the [commercial automobile] policy can be interpreted to include company employees. Assuming *arguendo* that "you" does refer solely to Superior Dairy, this does not foreclose the inclusion of Pontzer as an insured under the policy. We note again, as we have often in the past, that uninsured motorist coverage . . . was designed by the General Assembly to protect persons, not vehicles. *Martin v. Midwestern Group Ins. Co.* (1994), 70 Ohio St.3d 478, 639 N.E.2d 438, paragraph one of the syllabus. Since [Ohio Revised Code §] 3937.18 mandates underinsured as well as uninsured motorist coverage, obviously the same rationale applies to underinsured motorist coverage. It would be contrary to previous dictates of this court for us now to interpret the policy language at issue here as providing underinsured motorist insurance protection solely to a corporation without any regard to persons. *See Ady v. W. Am. Ins. Co.* (1982), 69 Ohio St.2d 593, . . . 433 N.E.2d 547. Rather, it would be reasonable to conclude that "you," while referring to Superior Dairy, also includes Superior's employees, since a corporation can act only by and through real live persons. It would be nonsensical to limit protection solely to the corporate entity, since a corporation, itself, cannot occupy an automobile, suffer bodily injury or death, or operate a motor vehicle. Here, naming the corporation as the insured is meaningless unless the coverage extends to some person or persons – including to the corporation's employees.

*Scott-Pontzer*, 710 N.E.2d at 1119. Thus, the Court found that, as an employee of Superior, Pontzer came within the definition of an insured under the automobile policy. Since that policy contained no language requiring that employees be

acting within the scope of their employment to receive UIM coverage, the Court found the decedent was covered under the business automobile policy.

The separate umbrella policy listed Superior Dairy as the named insured, and UM/UIM coverage was found to arise by operation of law. The Court first declared that, as an employee of Superior, Pontzer was an insured. Only then did the Court address the scope-of-employment issue, explaining that it had

> already found that Liberty Mutual had failed to offer underinsured motorist coverage through the umbrella policy issued to Superior Dairy. Thus, any language in the Liberty Mutual umbrella policy restricting insurance coverage was intended to apply solely to excess *liability* coverage and not for purposes of underinsured motorist coverage. *See, e.g., Demetry v. Kim* (1991), 72 Ohio App.3d 692, 698, 595 N.E.2d 997, 1001. Therefore, there is no requirement in the umbrella policy that Pontzer had to be acting during the scope of his employment to qualify for underinsured motorist coverage.

710 N.E.2d at 1120. Based on this determination, the Court held that Pontzer was an insured entitled to UIM coverage even though he was not acting within the scope of his employment at the time of the accident.

Plaintiff argues that the district court misinterpreted this portion of the *Scott-Pontzer* decision, based on its erroneous view that the Ohio Supreme Court failed to consider the differences between the definitions of an insured in each of the two policies. The district court specifically found that from the summary treatment of the umbrella policy, "one is left with the impression that the Ohio Supreme Court simply decided that since they found uninsured/underinsured coverage under the business automobile policy they might as well find it under the umbrella policy as well." *Lawler*, 163 F. Supp.2d at 856. Relying on the fact that the *Scott-Pontzer* opinion did not discuss the scope-of-employment limitation