ROBERTS, Admr., et al., Appellees,

v.

WAUSAU BUSINESS INSURANCE COMPANY et al., Appellants.

[Cite as *Roberts v. Wausau Business Ins. Co.*, 149 Ohio App.3d 612, 2002-Ohio-4734.]

Court of Appeals of Ohio,
Tenth District, Franklin County.

Nos. 02AP–04 and 02AP–05.

Decided Sept. 10, 2002.

Plymale & Associates, L.L.P., and Ronald E. Plymale; and T.J. Snyder, for appellees.

John C. Cahill and Gary L. Grubler, for appellants Wausau Business Insurance Company, Nationwide Mutual Insurance Company and Nationwide Mutual Fire Insurance Company.

Berlon & Timmel and Daniel G. Taylor, for appellant Cincinnati Insurance Company.

TYACK, Presiding Judge.

{¶ 1}  On May 12, 1998, G. Donald Roberts, individually and as administrator of the estate of Julie A. Roberts, and Mary Ann Roberts filed a complaint in the Franklin County Court of Common Pleas against Roy R. Enyart Jr. and the Cincinnati Insurance Company ("Cincinnati").  Donald and Mary Ann Roberts are the parents of Julie A. Roberts, who died as a result of injuries sustained in an automobile collision occurring on December 28, 1997.  Julie Roberts was a passenger in an automobile operated by Enyart.  The Robertses' claims included wrongful death, declaratory judgment, exemplary damages, and medical pay-

ments.  In essence, the Robertses sought damages and underinsured motorist ("UIM") coverage.

{¶ 2}  Enyart was insured by Grange Mutual Casualty Company.  Enyart's policy had liability limits of $50,000 per person and $100,000 per accident and also provided uninsured motorist coverage in the same amounts.  Julie Roberts was the named insured on an automobile policy and a tenant policy issued by Cincinnati.  Julie Roberts's automobile insurance included UIM coverage with limits of $100,000 per person and $300,000 per accident.  Donald and Mary Ann Roberts were insured under an automobile policy and a homeowner's insurance policy issued by Cincinnati.  The Robertses' automobile policy had UIM coverage with limits of $100,000 per person and $300,000 per accident.

{¶ 3}  On October 13, 1998, the Robertses filed a first amended complaint adding as a defendant the Board of Education for the Reynoldsburg City School District ("Reynoldsburg").  At the time of the accident, Julie Roberts was employed by Reynoldsburg as a school teacher.  The Robertses sought payment from Reynoldsburg for medical expenses pursuant to certain insurance benefits provided to employees.

{¶ 4}  On November 24, 1998, a second amended complaint was filed, adding as a defendant Eric R. Roberts (no relation to the plaintiffs).  Eric Roberts was driving an automobile on the night of the accident and was allegedly a joint tortfeasor with Enyart.  The automobile driven by Eric Roberts was insured by American National Insurance Company with liability limits of $100,000 per person and $300,000 per occurrence.

{¶ 5}  On June 24, 1999, Cincinnati filed a motion for summary judgment arguing, in part, that the UIM coverage under Julie Roberts's automobile policy was not available because the tortfeasors' liability limits were equal to or in excess of the UIM coverage.

{¶ 6}  On December 28, 1999, the same plaintiffs plus Mark D. Roberts, Julie's brother, filed a complaint in the Franklin County Court of Common Pleas against Wausau Business Insurance Company ("Wausau"), Nationwide Mutual Fire Insurance Company, and Nationwide Mutual Insurance Company (collectively referred to as "Nationwide").  Mark Roberts was the named insured on an automobile policy issued by Cincinnati that contained UIM coverage with limits of $100,000 per person and $300,000 per accident.  In addition, he had homeowner's insurance through Cincinnati.

{¶ 7}  At the time of the accident, Wausau insured Reynoldsburg under a business automobile policy.  The Wausau policy provided UIM coverage with a $7,000,000 limit.  In addition, Reynoldsburg was insured by Wausau under an umbrella liability policy with a UIM limit of $2,000,000.  The Robertses claimed,

in part, that they were entitled to UIM coverage under the Wausau policies pursuant to *Scott–Pontzer v. Liberty Mut. Fire Ins. Co.* (1999), 85 Ohio St.3d 660, 710 N.E.2d 1116. Wausau filed an answer and a counterclaim seeking a declaration as to various issues relating to its alleged UIM obligations.

{¶ 8} Nationwide was eventually dismissed from the actions.

{¶ 9} On April 21, 2000, the two cases were consolidated.

{¶ 10} Various motions for summary judgment were filed. On March 23, 2000, the court rendered a decision on Cincinnati's June 24, 1999 motion for summary judgment. The trial court found that under 1994 Am.Sub.S.B. 20 and former R.C. 3937.18(A)(2), plaintiffs could not recover under Julie Roberts's automobile policy with Cincinnati as the tortfeasors' liability coverage was greater than Julie Roberts's UIM limit. The trial court further concluded that the plaintiffs could recover under Donald and Mary Ann Robertses' UIM automobile policy.

{¶ 11} On May 1, 2001, the trial court rendered a decision on various other motions for summary judgment. The trial court concluded that pursuant to *Scott–Pontzer*, Julie Roberts was an insured under Wausau's business automobile policy issued to Reynoldsburg. Therefore, the plaintiffs were entitled to UIM coverage up to the $7,000,000 limit, subject to actual damages.

{¶ 12} The trial court further found that Julie Roberts was an insured under Wausau's umbrella policy issued to Reynoldsburg. Therefore, the plaintiffs were entitled to additional UIM coverage up to the $2,000,000 limit, subject to actual damages.

{¶ 13} The trial court also concluded that the plaintiffs were entitled to UIM coverage under Donald and Mary Ann Robertses' automobile policy issued by Cincinnati, as already determined in its March 23, 2000 decision, and further found that the limit of that coverage would be $200,000 (representing $100,000 each). The trial court also found that Mark Roberts was entitled to UIM coverage under his automobile policy issued by Cincinnati.

{¶ 14} Further, the trial court concluded that the plaintiffs were entitled to UIM coverage under their tenant's and homeowner's insurance policies issued by Cincinnati.

{¶ 15} The trial court lastly concluded that the first or primary policies for Julie Roberts's estate were the Wausau business automobile policy with the $7,000,000 limit and Julie Roberts's $100,000 tenant's policy with Cincinnati. The trial court further found that the Wausau umbrella policy was in excess of the above coverages but primary to any other applicable policy issued by Cincinnati.

{¶ 16}   On May 30, 2001, the trial court rendered a decision on Wausau's and Cincinnati's motions for reconsideration. The trial court determined that based on the Supreme Court's recent decision in *Davidson v. Motorists Mut. Ins. Co.* (2001), 91 Ohio St.3d 262, 744 N.E.2d 713, Cincinnati's tenant's and homeowner's insurance policies issued to the plaintiffs did not provide UIM coverage. In addition, the trial court modified its May 1, 2001 decision as to the limit available to Donald and Mary Ann Roberts under their Cincinnati automobile policy. Pursuant to the recent decision of *Clark v. Scarpelli* (2001), 91 Ohio St.3d 271, 744 N.E.2d 719, the trial court concluded that the policy limited Donald and Mary Ann Robertses' total coverage to the per-person limit of $100,000.

{¶ 17}   The trial court rejected Wausau's argument that under the *Scarpelli* case, the UIM coverages in Julie Roberts's and Roy Enyart's automobile policies were triggered. The trial court concluded that because Roy Enyart's insurer had offered its liability limit of $50,000 and because Eric Roberts's insurer had offered its liability limit of $100,000, the total liability limits ($150,000) exceeded Julie Roberts's UIM limit ($100,000) under her Cincinnati automobile policy and, therefore, the plaintiffs were not entitled to UIM coverage under Julie's automobile policy. The trial court rejected other arguments set forth by Wausau.

{¶ 18}   Also on May 30, 2001, the trial court denied Wausau's motion to compel joinder of certain other insurance companies that allegedly provided UIM coverage under *Scott–Pontzer*. The trial court also denied Wausau's alternative motion to dismiss.

{¶ 19}   Cincinnati then settled with the plaintiffs for $10,000 and was dismissed from the action on June 12, 2001.

{¶ 20}   A trial on the issue of liability was held on June 4 through June 13, 2001. Wausau was the only remaining defendant. The jury found that Roy Enyart and Eric Roberts had been negligent and that their negligence had been the proximate cause of the death of Julie Roberts. The jury found damages of $1,275,000 against Wausau. This award was reduced by $150,000, representing the amount given to the plaintiffs from the tortfeasors' liability carriers.

{¶ 21}   On June 20, 2001, the plaintiffs filed a motion for prejudgment and postjudgment interest. On June 29, 2001, the trial court rendered a decision granting plaintiffs' motion. The trial court determined that the plaintiffs were entitled to prejudgment interest calculated as of the date of the automobile collision.

{¶ 22}   On August 7, 2001, the trial court rendered a decision on Wausau's July 11, 2001 motion for an additional credit against the judgment. Wausau had argued that it was entitled to a $10,000 credit against the jury verdict based on

Cincinnati's settlement with the plaintiffs. The trial court concluded that Wausau was not entitled to this credit.

{¶ 23} On August 21, 2001, the trial court journalized a final judgment entry, incorporating all of its previous decisions on motions and the jury verdict, with the setoff of $150,000. On August 31, 2001, Wausau filed a motion for judgment notwithstanding the verdict ("JNOV") and a motion for a new trial. On December 7, 2001, the trial court filed a decision and entry denying Wausau's motions for JNOV and a new trial.

{¶ 24} Wausau (hereinafter "appellant") has appealed to this court, assigning the following errors for our consideration:

{¶ 25} "1. It was error for the trial court to grant Plaintiffs' motion for summary judgment.

{¶ 26} "2. It was error for the trial court to grant Cincinnati Insurance Company's [motion for summary judgment].

{¶ 27} "3. It was error for the trial court to deny Wausau's [motion for summary judgment] and to find UM coverage for the Plaintiffs under Wausau's policies.

{¶ 28} "4. It was error for the trial court to deny Wausau's motion for reconsideration.

{¶ 29} "5. It was error for the trial court to assess prejudgment interest without a hearing.

{¶ 30} "6. It was error for the trial court to assess prejudgment interest from the date of the accident.

{¶ 31} "7. It was error for the trial court to deny Wausau a credit for Plaintiffs' settlement with Cincinnati.

{¶ 32} "8. It was error for the trial court to deny Wausau's motion to compel joinder.

{¶ 33} "9. It was error for the trial court to deny Wausau's motion for JNOV."

{¶ 34} As they are interrelated, we will address appellant's first, second, third, fourth, and ninth assignments of error together. In essence, appellant's arguments center on the trial court's determination, by way of summary judgment, that the plaintiffs (hereinafter "appellees") were entitled to UIM coverage under appellant's business automobile policy issued to Reynoldsburg, the decedent's employer. Summary judgment is appropriate when, construing the evidence most strongly in favor of the nonmoving party (1) there is no genuine issue of material fact, (2) the moving party is entitled to judgment as a matter of law,

and (3) reasonable minds can come to but one conclusion, that conclusion being adverse to the nonmoving party. *Zivich v. Mentor Soccer Club, Inc.* (1998), 82 Ohio St.3d 367, 369–370, 696 N.E.2d 201, citing *Horton v. Harwick Chem. Corp.* (1995), 73 Ohio St.3d 679, 653 N.E.2d 1196, paragraph three of the syllabus. Our review of the appropriateness of summary judgment is de novo. See *Andersen v. Highland House Co.* (2001), 93 Ohio St.3d 547, 548, 757 N.E.2d 329.

{¶ 35}  The first issue we address is whether this case is distinguishable from *Scott–Pontzer*. Appellant contends that the policy at issue here is distinguishable from the policy interpreted in *Scott–Pontzer* and, therefore, that the reasoning underlying the decision in *Scott–Pontzer* is not applicable to the case at bar. Specifically, appellant asserts that the basis for the *Scott–Pontzer* decision was the ambiguity of the word "you," as found in the policy at issue. Appellant also emphasizes that the policy in *Scott–Pontzer* was issued to a for-profit corporation.

{¶ 36}  In *Scott–Pontzer*, the Supreme Court addressed the issue of whether the decedent was an insured under his employer's commercial automobile policy, which contained UIM coverage. Interpreting policy language identical to the language used in appellant's policy, the Supreme Court determined that the policy language could be interpreted to include company employees. Id., 85 Ohio St.3d at 664, 710 N.E.2d 1116. The Supreme Court reiterated that uninsured/UIM motorist coverage, mandated by R.C. 3937.18, was designed to protect persons, not vehicles. Id. The Supreme Court stated that it was reasonable to conclude that "you," while referring to the corporation itself, would also include the corporation's employees, since a corporation itself cannot occupy an automobile, suffer bodily injury or death, or operate a motor vehicle. Id. Because the language in the policy concerning the identity of insureds was ambiguous, the Supreme Court concluded that the employee was insured under the policy for purposes of UIM coverage. Id. at 665, 710 N.E.2d 1116.

{¶ 37}  In addition, the Supreme Court concluded that because the policy had no language requiring that employees be in the scope of employment in order to receive UIM coverage, the fact that the decedent was not in the scope of his employment at the time of the automobile collision did not preclude coverage. Id. at 665–666, 710 N.E.2d 1116.

{¶ 38}  Appellant argues that in contrast to the policy at issue in *Scott–Pontzer*, the policy here specifically made school employees insureds *when they were acting in the scope and course of employment.* Therefore, appellant contends that there is no ambiguity in appellant's policy as to who was an insured, as persons—school employees acting in the scope and course of their employment with Reynoldsburg—were actually made insureds, as opposed to merely an entity as was the case in *Scott–Pontzer*. Hence, appellant asserts that

the basis for the decision in *Scott–Pontzer* is not applicable to the policy at issue here.

{¶ 39}   Appellant makes a novel argument.   However, it is not well taken, as the provisions of which appellant speaks apply, by express terms, only to liability coverage and not to UIM coverage.   As in *Scott–Pontzer*, there are no provisions in appellant's policy that limit UIM coverage to employees who are within the scope and course of their employment.   Therefore, the analysis set forth in *Scott–Pontzer* applies to the policy at issue here.

{¶ 40}   Appellant also contends that *Scott–Pontzer* was based on a former version of R.C. 3937.18 and that the version in effect at the relevant time here allows for insurance carriers to include antistacking language in policies.   While appellant may be correct that former R.C. 3937.18(G) as in effect at the pertinent time here, allows for antistacking provisions, the case herein does not involve stacking.   There is no attempt to aggregate UIM coverages under separate policies.   There is only one UIM policy at issue here—appellant's business automobile policy with UIM limits of $7,000,000, a limit that easily covered the entire jury verdict.   Hence, the fact that R.C. 3937.18 has been amended since the decision in *Scott–Pontzer* changes nothing about the determination of who was an insured under appellant's policy.

{¶ 41}   Appellant next argues that its policy provides UIM coverage only to persons who occupied automobiles owned by Reynoldsburg and that Julie Roberts was not occupying a vehicle owned by herself or Reynoldsburg at the time of the collision.   The relevant portions of the policy state:

{¶ 42}   "Business Auto Declarations

{¶ 43}   "* * *

{¶ 44}   "ITEM TWO – SCHEDULE OF COVERAGES AND COVERED AUTOS.

{¶ 45}   "* * * Each of these coverages will apply only to those 'autos' shown as covered 'autos.'   'Autos' are shown as covered 'autos' for a particular coverage by the entry of one or more of the symbols from the COVERED AUTOS Section of the Business Auto Coverage Form next to the name of the coverage."

{¶ 46}   The UIM coverage was given the symbol "2" which is defined in "SECTION I—COVERED AUTOS" as:

{¶ 47}   "2 = OWNED 'AUTOS' ONLY.   Only those 'autos' you own * * *."

{¶ 48}   Appellees argue that it is axiomatic that the purpose of UIM coverage under R.C. 3937.18 is to protect persons, not autos, and that Julie Roberts was an insured under the policy despite occupying Roy Enyart's automobile, which was not a covered auto.   Appellees assert that for this exclusion to be valid, it must

comply with former R.C. 3937.18 and that former R.C. 3937.18 did not permit the exclusion at issue here.

{¶ 49} In *Martin v. Midwestern Group Ins. Co.* (1994), 70 Ohio St.3d 478, 639 N.E.2d 438, syllabus, the Supreme Court held:

{¶ 50} "1. Pursuant to R.C. 3937.18, uninsured motorist coverage was designed by the General Assembly to protect persons, not vehicles. * * *

{¶ 51} "2. The validity of an insurance policy exclusion of uninsured motorist coverage depends on whether it conforms to R.C. 3937.18."

{¶ 52} In determining whether a policy's so-called "other owned vehicle" exclusion was valid, the Supreme Court looked to the version of R.C. 3937.18 then in effect in order to ascertain whether the statute permitted the exclusion in the policy. The Supreme Court stated that R.C. 3937.18 is the yardstick by which all exclusions of uninsured motorist coverage must be measured. Id., 70 Ohio St.3d at 481, 639 N.E.2d 438. Under R.C. 3937.18 as in effect at the relevant time in *Martin*, the "other owned vehicle" exclusion in the policy at issue was not valid. Id. at 481, 639 N.E.2d 438.

{¶ 53} Appellant correctly points out that the legislature amended R.C. 3937.18 in 1997 Am.Sub.H.B. No. 261 to allow for the "other owned vehicle" exclusion. See, also, *Baughman v. State Farm Mut. Auto. Ins. Co.* (2000), 88 Ohio St.3d 480, 484, 727 N.E.2d 1265. However, this does not affect the holding in *Martin* that an exclusion of uninsured/UIM coverage must conform to R.C. 3937.18. R.C. 3937.18 as in effect at the relevant time stated:

{¶ 54} "(A) No automobile liability or motor vehicle liability policy of insurance insuring against loss resulting from liability imposed by law for bodily injury or death suffered by any person arising out of the ownership, maintenance, or use of a motor vehicle shall be delivered or issued for delivery in this state * * * unless both of the following coverages are offered *to persons insured under the policy* for loss due to bodily injury or death suffered by such insureds:

{¶ 55} "* * *

{¶ 56} "(2) Underinsured motorist coverage, which shall be in an amount of coverage equivalent to the automobile liability or motor vehicle liability coverage and shall provide protection *for insureds* thereunder against loss for bodily injury, sickness, or disease, including death, suffered by any person insured under the policy * * *.

{¶ 57} "* * *

{¶ 58} "(J) The coverages offered under division (A) of this section or selected in accordance with division (C) of this section may include terms and conditions

that preclude coverage for bodily injury or death suffered by an insured under any of the following circumstances:

{¶ 59} "(1) While the insured is operating or occupying a motor vehicle owned by, furnished to, or available for the regular use of a named insured, * * * if the motor vehicle is not specifically identified in the policy under which a claim is made * * *." (Emphasis added.) 1997 Am.Sub.H.B. No. 261, 147 Ohio Laws, Part II, 2372–2373.

{¶ 60} The exclusion in appellant's policy states that UIM coverage only applies to autos "you" own. However, former R.C. 3937.18(J)(1) allows the exclusion of UIM coverage only where the insured is operating or occupying a motor vehicle owned by, furnished to, or available for the regular use of a named insured and is not specifically identified in the policy. In the case at bar, Julie Roberts was not occupying a motor vehicle owned by her or appellant. Rather, she was occupying a vehicle owned or operated by Roy Enyart. Hence, while former R.C. 3937.18(J) may have brought back the "other owned vehicle" exclusion, which had been found invalid in *Martin*, it did so only to the extent provided in that statute. Former R.C. 3937.18(J) did not allow for the specific exclusion in appellant's policy as applied to the circumstances here. Therefore, the provision in appellant's policy that sought to exclude UIM coverage where an insured was not occupying a vehicle owned by her or a named insured is invalid. Hence, appellant's arguments in this regard are not well taken.

{¶ 61} Appellant next sets forth arguments relating to the fact that Julie Roberts was employed by, and the insurance policy was issued to, a board of education. First, appellant asserts that a board of education may obtain UIM coverage only for employees who are acting within the course and scope of their employment with the school board. Appellant cites certain sections of the Revised Code in support of its argument. Appellant cites former R.C. 3313.201, 9.83, 3313.203, and 3327.09. However, there is nothing in these statutory provisions that precludes a board of education from purchasing and/or extending UIM coverage to its employees under the circumstances presented here. Indeed, as appellees point out, the Revised Code specifically authorizes political subdivisions and/or boards of education to purchase UIM coverage for its employees, and there is nothing limiting that coverage to only those employees who are within the scope and course of employment.

{¶ 62} Appellant also contends that Julie Roberts was not an employee under R.C. 2744.01(B) because she was not within the scope and course of her employment with Reynoldsburg at the time of the collision. However, former R.C. 2744.01(B) defined "employee" in the context of political subdivision tort liability and has nothing to do with nor does it have any effect on UIM coverage for employees. Indeed, former R.C. 2744.01 specifically states that the defini-

tions are only for terms "as used in this chapter." Hence, the definition of "employee" as set forth in former R.C. 2744.01(B) does not affect the status of Julie Roberts as an insured for UIM purposes.

{¶ 63} Further, because of the precedent of *Scott–Pontzer* and in light of R.C. 3937.18 as in effect at the relevant time period here, we find that Reynoldsburg could lawfully and did indeed purchase automobile insurance that extended UIM coverage (at the very least, by operation of law) to Julie Roberts. Therefore, we reject appellant's arguments that Reynoldsburg did not adopt a resolution agreeing to insure teachers in Julie Roberts's situation at the time of the collision and that Reynoldsburg had no interest to so insure teachers.

{¶ 64} Appellant's next argument is that the trial court should have found that there was UIM coverage under Roy Enyart's automobile policy and Cincinnati's policies with appellees. Appellant asserts that the limits of liability coverage for the two tortfeasors was $150,000 and that appellees had in excess of this in UIM coverage through Roy Enyart's uninsured motorist coverage, various automobile and homeowners' policies with Cincinnati, and two other *Scott–Pontzer* insurance policies.

{¶ 65} First, the trial court found that under former R.C. 3937.18(A)(2), the tortfeasors' liability coverage here was greater than Julie Roberts's UIM limit in her personal automobile policy and, therefore, appellees could not recover under Julie Roberts' automobile policy and its UIM coverage. In *Clark*, supra, the Supreme Court held:

{¶ 66} "For the purpose of setoff, the 'amounts available for payment' language in R.C. 3937.18(A)(2) means the amounts actually accessible to and recoverable by an underinsured motorist claimant from all bodily injury liability bonds and insurance policies (including from the tortfeasor's liability carrier)." Id., 91 Ohio St.3d 271, 744 N.E.2d 719, at syllabus.

{¶ 67} Roy Enyart's and Julie Roberts's automobile policies contained provisions valid under R.C. 3937.18(H) as in effect at the pertinent time that limited all claims arising from a single wrongful death to the per-person limits contained in those policies. In addition, those policies contained valid antistacking provisions. The estate received $150,000 under the tortfeasors' liability policies, which was greater than the UIM limits in Julie Roberts's and Roy Enyart's policies. Therefore, the UIM coverages in those policies were not triggered.

{¶ 68} As to the Cincinnati tenant's/homeowners' policies, the Supreme Court's decision in *Davidson* makes it clear that such policies did not provide UIM coverage:

{¶ 69} "A homeowner's insurance policy that provides limited liability coverage for vehicles that are not subject to motor vehicle registration and that are not intended to be used on a public highway is not a motor vehicle liability policy and is not subject to the requirement of former R.C. 3937.18 to offer uninsured and underinsured motorist coverage." Id., 91 Ohio St.3d 262, 744 N.E.2d 713, at syllabus.

{¶ 70} Hence, appellant's arguments regarding the available UIM coverages under other policies is not well taken.

{¶ 71} Appellant's final argument is that the trial court erred in finding that appellant's policy was primary. Appellant asserts that Cincinnati's automobile policies are primary. As indicated above, Cincinnati issued automobile insurance policies to Julie Roberts's father and mother and her brother. The trial court found that because appellant's policies insured the decedent herself and therefore the estate, appellant's policies were the primary UIM coverages as compared to Cincinnati's automobile policies issued to the individual beneficiaries. We agree with the trial court.

{¶ 72} As appellees aptly point out, their UIM coverages are triggered only if the decedent's UIM coverage is exhausted. Here, Julie Roberts was an insured under appellant's policies. Thus, her UIM coverage is primary. The jury verdict was for $1,275,000. Appellant's business automobile policy limit of $7,000,000 easily covered this amount. Hence, there was no need to look to the individual beneficiaries' UIM coverages.

{¶ 73} For all of the reasons set forth above, the trial court did not err in its decisions on the various motions for summary judgment relating to UIM coverage in this case. Accordingly, appellant's first, second, third, fourth, and ninth[1] assignments of error are overruled.

{¶ 74} In its fifth and sixth assignments of error, appellant contends that the trial court erred in not holding an oral hearing on the issue of prejudgment interest and in granting prejudgment interest as of the date of the collision. As to the oral hearing, R.C. 1343.03(A) states:

{¶ 75} "In cases other than those provided for in sections 1343.01 and 1343.02 of the Revised Code, when money becomes due and payable upon any bond, bill, note, or other instrument of writing, * * * and upon all judgments, decrees, and orders of any judicial tribunal for the payment of money arising out of tortious

---

1. Appellant's motion for JNOV, which was denied by the trial court, arguably was improper, as it raised no argument relating to the jury's verdict. Rather, it merely reiterated legal arguments that had been previously determined in motions for summary judgment.

conduct or a contract * * *, the creditor is entitled to interest at the rate of ten per cent per annum * * *."

{¶ 76}   There is no requirement in the above provision that mandates an oral hearing on the issue of prejudgment interest.   See *Polek v. Tillimon* (Mar. 1, 2002), Lucas App. No. L–01–1354, 2002 WL 313401; *Shampton v. Springboro* (Nov. 13, 2001), Warren App. No. CA2000–08–080, 2001 WL 1403051.   Accordingly, the trial court did not err in determining the issue on the written arguments of the parties.

{¶ 77}   Appellant next argues that the trial court erred in awarding prejudgment interest calculated as of the date of the automobile collision.   In *Landis v. Grange Mut. Ins. Co.* (1998), 82 Ohio St.3d 339, 341, 695 N.E.2d 1140, the Supreme Court stated that UIM claims are contract claims under which prejudgment interest is allowed.   In determining whether to award prejudgment interest pursuant to R.C. 1343.03(A), the court need only ask whether the aggrieved party has been fully compensated.   *Royal Elec. Constr. Corp. v. Ohio State Univ.* (1995), 73 Ohio St.3d 110, 116, 652 N.E.2d 687.   That UIM benefits were denied in good faith is irrelevant because lack of a good faith effort to settle is not a predicate to an award of prejudgment interest pursuant to R.C. 1343.03(A), as compared to R.C. 1343.03(C).   *Landis* at 341, 695 N.E.2d 1140.

{¶ 78}   Whether prejudgment interest should be calculated from the date coverage was demanded or denied, from the date of the automobile collision, or some other time based on when the insurance company should have made payment is for the trial court to determine.   Id. at 342, 695 N.E.2d 1140.   Determinations regarding prejudgment interest rest within the sound discretion of the trial court.   *Lovejoy v. Westfield Natl. Ins. Co.* (1996), 116 Ohio App.3d 470, 476, 688 N.E.2d 563, citing *Glimcher v. Reinhorn* (1991), 68 Ohio App.3d 131, 587 N.E.2d 462.   See, also, *Wagner v. Midwestern Indemn. Co.* (1998), 83 Ohio St.3d 287, 292, 699 N.E.2d 507.

{¶ 79}   In the case at bar, the trial court awarded appellees prejudgment interest from the date of the automobile collision, stating that the date coverage was demanded had no relevancy because appellant would have denied appellees' claim.   The trial court determined that in order to fully compensate appellees, interest should be calculated from the date of the collision.   Appellant has not pointed to any and, under the circumstances of this case, we can find no abuse of discretion in that determination.

{¶ 80}   For the forgoing reasons, appellant's fifth and sixth assignments of error are overruled.

{¶ 81}   In its seventh assignment of error, appellant contends that the trial court should have granted it a credit for appellees' settlement with Cincinna-

ti. As indicated above, appellees settled with Cincinnati for $10,000, and Cincinnati was dismissed from the action. On July 11, 2001, appellant moved for a $10,000 credit against the judgment, which was denied.

{¶ 82} Appellees argue that no such credit should be given because it is not mandated under R.C. 3937.18(A)(2), and appellant's policy did not unambiguously call for such a setoff. Appellees further assert that setoffs are allowed only for liability insurance, not for UIM coverage. We agree.

{¶ 83} Former R.C. 3937.18(A)(2) stated, "The policy limits of the underinsured motorist coverage shall be reduced by those amounts available for payment under all applicable bodily injury *liability* bonds and insurance policies covering persons liable to the insured." (Emphasis added.) 1997 Am.Sub.H.B. No. 261, 147 Ohio Laws, Part II, 2373. Here, Cincinnati provided only secondary UIM coverage; it did not provide *liability* coverage for either of the tortfeasors. In addition, Cincinnati's settlement with appellees was not a release or covenant not to sue a tortfeasor as set forth in R.C. 2307.32(F). Further, the settlement clearly stated that it was a compromise of a disputed claim and was merely to avoid litigation.

{¶ 84} Last, appellant's policies did not contain any provision that clearly called for a setoff as requested by appellant.

{¶ 85} For these reasons, the trial court did not err in denying appellant's motion for a credit due to appellees' settlement with Cincinnati. Accordingly, appellant's seventh assignment of error is overruled.

{¶ 86} In its eighth assignment of error, appellant contends that the trial court erred in not granting its May 2, 2001 motion to compel joinder of Donald and Mary Ann Robertses' employers' insurance carriers. Appellant argued that these insurance carriers were other *Scott–Pontzer* insurers who supplied UIM coverage to Donald and Mary Ann Roberts and that they were necessary parties.

{¶ 87} The trial court found first that the motion was untimely, as it was filed after the dispositive motion deadline and a mere month before the scheduled trial date. Further, the trial court found that appellant was aware of Donald and Mary Ann Robertses' employers since July 13, 2000, and that appellant was aware as of November 9, 2000, that these employers would not be added as parties. The trial court stated that had appellant believed that those insurance carriers were indispensable parties, it should have filed its motion by those dates. In addition, the trial court stated that appellant would be free to file contribution or indemnification claims against those carriers if it so chooses.

{¶ 88} Contrary to appellant's assertion, those insurance carriers are not indispensable or necessary parties under Civ.R. 19.1. As indicated earlier,

appellant is the primary UIM carrier. There was no need for appellees to include those insurance companies in this case.

{¶ 89} Accordingly, appellant's eighth assignment of error is overruled.

{¶ 90} Having overruled each of appellant's assignments of error, we affirm the judgment of the Franklin County Court of Common Pleas.

Judgment affirmed.

KLATT and PETREE, JJ., concur.