OPINION
{¶ 1} Thomas P. Sagar appeals a judgment of the Franklin County Court of Common Pleas denying him uninsured motorist ("UM") coverage from Continental Casualty Company ("Continental"), Nationwide Mutual Fire Insurance Company and Nationwide Mutual Insurance Company. Two assignments of error are currently before the court[1]:
 {¶ 2} "First Assignment of Error
 {¶ 3} "The trial court erred in finding that Plaintiff-Appellant Thomas P. Sagar is not entitled to uninsured motorist coverage under the Continental policy.
 {¶ 4} "Second Assignment of Error
 {¶ 5} "The trial court erred in finding that Plaintiff-Appellant Thomas P. Sagar is not entitled to uninsured motorist coverage under the Nationwide policies."
 {¶ 6} Thomas P. Sagar was horribly injured in an automobile collision which occurred on February 23, 1990. Another driver drove left of center and struck Mr. Sagar's vehicle head on. The driver who was at fault was uninsured and subsequently discharged in bankruptcy the $5,000,000 judgment obtained against him. Mr. Sagar now seeks to recover some of the damages for his injuries from insurance companies which insured his own employer, his father's employer and his mother's employer.
 {¶ 7} The Kroger Company employed both Thomas Sagar and his father, Dennis Sagar. Continental provided commercial liability insurance for The Kroger Company. In the trial court, counsel for Thomas Sagar argued that UM coverage was provided by Continental through the application of Scott-Pontzer v. Liberty Mut. Fire Ins. Co. (1999),85 Ohio St.3d 660, to the facts of this case.
 {¶ 8} In Scott-Pontzer, the Supreme Court of Ohio followed a fundamental principle in the application of contract law — interpreting ambiguous terms and language strictly against the drafter of the contract and liberally in favor of the "insured." In particular, the court examined the definitional provision of an insurance contract issued to a corporation, which "insured" as: "1. You; 2. If you are an individual, any family member." The court found that this definition of an insured as "you" created ambiguity; since a corporation can act only through real persons, one reasonable interpretation of "you" included the corporation's employees. Accordingly, the corporate employee was held to be an insured as a result of the ambiguous definition and, ultimately UM/UIM coverage arose by operation of law.
 {¶ 9} The trial judge found that the Continental policy did not contain the same definitions of persons or entities "insured" which were present in the Liberty Mutual Fire Insurance Company policy at issue in the Scott-Pontzer case. Based upon the difference in the definitions, the trial court found that Mr. Sagar was not an insured under the Continental policy.
 {¶ 10} The trial court also discussed the impact of the notice and subrogation provisions of the Continental policy on the potential coverage for Mr. Sagar. However, as discussed infra, the case law upon which the trial court relied has now been overruled by Ferrando v. Auto-Owners Mut. Ins. Co. (2002), 98 Ohio St.3d 186, 2002-Ohio-7217. Indeed, if we determine that the trial court erred in finding that Mr. Sagar is not an "insured" within the reach of Scott-Pontzer, the case would need to be remanded to the trial court for additional proceedings in light of the Ferrando case, as discussed below.
 {¶ 11} In arguing that the trial court erred in finding Mr. Sagar not to be an "insured," his counsel relies upon the words of the Ohio UM endorsement which is part of the Continental policy. The endorsement reads:
 {¶ 12} "UNINSURED MOTORIST COVERAGE (UM) — this coverage provides you and all covered persons with bodily injury protection if injured in an accident with a driver who has no liability insurance, or has failed to post a bond, and who is legally liable for your damages. The coverage also provides protection if you are injured as a result of a hit-and-run accident."
 {¶ 13} Continental responds that "it is a clear precondition of coverage that a person alleging [sic] to be an insured must meet the requirements for being such under the liability section of the policy." Continental cites Holliman v. Allstate Ins. Co. (1999), 86 Ohio St.3d 414, as support for its position.
 {¶ 14} In the Holliman case, the Supreme Court of Ohio rejected an effort to engraft the more expansive definition of "insured persons" contained in a policy issued by Nationwide Insurance Company upon an umbrella policy issued by Allstate Insurance Company. The fact that Holliman involved two separate policies from two insurers deprives the Holliman case of precedential value in the instant case. Instead, the fact that Continental's policy has conflicting definitions of who is insured creates an ambiguity which must be resolved against Continental and in favor of coverage. See, e.g., Derr v. Westfield Cos. (1992),63 Ohio St.3d 537, 542.
 {¶ 15} Since the policy provision which addresses UM coverage in Ohio contains the very same language which was found in the Scott-Pontzer case to provide UM coverage, we find that Scott-Pontzer applies. The trial court erred in holding to the contrary.
 {¶ 16} However, as alluded to above, the inquiry does not end with the predicate determination that Scott-Pontzer is applicable to the policy at issue and that he qualifies as an "insured." In addition, the trial court must examine and apply Ferrando, supra.
 {¶ 17} In Ferrando, rendered in December 2002, the Supreme Court of Ohio posited the issue as "whether a provider of * * * [UM/UIM] coverage may be released from its obligation to provide coverage due to the failure of a claimant to notify the insurer of a potential claim prior to settlement with and full release of the tortfeasor who caused the injury giving rise to the potential claim." Id. at ¶ 1.
 {¶ 18} In Ferrando, the insurance policies required that the insurer be given prompt notice of a potential UM/UIM claim and required the consent of the insurer prior to settlement. Analyzing all "subrogation-related" provisions (i.e. prompt-notice and consent-to-settle clauses) in the same manner, the Ferrando court held:
 {¶ 19} "* * * [W]e determine that the insurer is released from the obligation to provide [UM/UIM] coverage when the insurer is prejudiced by the lack of reasonable notice or by the insured's failure to obtain consent to settle prior to the insured's settlement with and release of the tortfeasor." Id. (Emphasis added.)
 {¶ 20} The analysis next logically proceeds to the issue of prejudice and upon whom the burden of demonstrating its existence or nonexistence falls. In ultimately determining that a rebuttable presumption should arise under such circumstances, the Ferrando court concluded:
 {¶ 21} "* * * [T]he burden of presenting evidence to show a lack of prejudice should be on the insured, who has failed to comply with the terms of the policy. An additional reason for applying a presumption of prejudice with the burden of presenting evidence on the insured is that the General Assembly has specifically allowed a right of subrogation to providers of [UM/UIM] coverage. * * * However, simply because the General Assembly has allowed subrogation does not prevent courts from inquiring into insurer prejudice when a subrogation-related clause is not strictly complied with. If the insurer has suffered no prejudice from the insured's technical breach, it is difficult to justify permitting the insurer to deny coverage." Id. at ¶ 87. See, also Pack v. Monroe Guaranty Ins. Co., Franklin App. No. 02AP-732, 2003-Ohio-582, ¶¶ 16-22.
 {¶ 22} Given the foregoing, we sustain the first assignment of error and remand the case for further proceedings on the issues of notice and subrogation as required by Ferrando, supra.
 {¶ 23} The second assignment of error addresses the potential coverage under policies of insurance issued by one of two Nationwide Insurance Company entities, Nationwide Mutual Fire Insurance Company or Nationwide Mutual Insurance Company (hereinafter, collectively, "Nationwide").
 {¶ 24} Nationwide provided coverage to Patty Sagar's employer, Licking Heights School District Board of Education ("Licking Heights School Board"). Patty Sagar is Thomas Sagar's mother. Thomas lived with both of his parents when the automobile collision occurred. Thomas was only seventeen at the time.
 {¶ 25} One of the policies Nationwide issued was a Nationwide Business Auto policy which included a UM coverage definition and which defined an insured as "you" and "if you are an individual, any `family member.' "
 {¶ 26} Counsel for Thomas Sagar asserts that this Nationwide policy presents the identical situation addressed in Ezawa v. Yasuda Fire Marine Ins. Co. of Am. (1999), 86 Ohio St.3d 557.
 {¶ 27} The trial court assumed that the Ezawa case granted coverage, but then denied coverage based upon the notice and subrogation provision of the policy. As we noted above, the Supreme Court of Ohio has clarified the law to be applied in addressing notice and subrogation questions when it decided Ferrando, supra. Since the trial court did not have the benefit of the Ferrando case, these issues must be revisited.
 {¶ 28} Licking Heights School Board had a second policy of insurance with Nationwide which had a specific exclusion for liability arising from the ownership, operation, maintenance or use of an automobile with the exception of "on premises activities which are necessary or incidental to an `automobile' vocational technical class forming a regular part of the school's instructional program." The trial court relied upon Davidson v. Motorists Mut. Ins. Co. (2001),91 Ohio St.3d 262, in deciding that this policy did not provide UM coverage. We believe that Davidson is dispositive of the key issues and dictates that no coverage for UM injuries is provided by the policy. At oral argument, counsel for appellant acknowledged the lack of coverage under this Nationwide policy.
 {¶ 29} Counsel for Nationwide also argues that the fact the policies were issued to a school board is critical in determining whether the policies provided UM coverage. However, counsel for Nationwide acknowledges that our earlier case of Roberts v. Wausau Bus. Ins. Co. (2002), 149 Ohio App.3d 612, 2002-Ohio-4734, reaches an opposite conclusion. We will follow Roberts.
 {¶ 30} We, therefore, sustain the second assignment of error with respect to the Nationwide Business Auto policy, but overrule the second assignment of error with respect to the second Nationwide policy.
 {¶ 31} In summary, we sustain the first assignment of error in its entirety and the second assignment of error in part. The judgment of the trial court is reversed and this cause is remanded for further proceedings consistent with this opinion.
Judgment reversed and cause remanded.
BOWMAN and BROWN, JJ., concur.
[1] A third assignment of error relating to UM coverage potentially available under a homeowner's policy issued by Prudential Insurance Company of America has been withdrawn.