OPINION
{¶ 1} Defendant-Appellant, Nationwide Agribusiness Insurance Company ("Nationwide"), appeals an Allen County Common Pleas Court decision finding uninsured/underinsured ("UM/UIM") motorist coverage for Plaintiff-Appellee, Colleen Finn, under three insurance policies issued to her employer, Kenton City School District. The insurance policies include a business auto policy issued by Wausau Insurance Company ("Wausau policy") and an education liability policy ("education policy") and umbrella policy issued by Nationwide.
 {¶ 2} On appeal, Nationwide contends that the trial court erred in finding UM/UIM coverage under all three policies. Because the Wausau Insurance Company was never made a party to this action, the trial court's finding of UM/UIM coverage under the Wausau policy is void. Furthermore, Finn is precluded from coverage under Nationwide's umbrella policy because UM/UIM coverage provisions expressly limit coverage to employees acting within the scope of their employment. Conversely, because UM/UIM coverage under the education policy arises by operation of law, any language limiting coverage to the scope of employment was intended solely to apply to liability coverage. However, issues of material fact exist as to whether Nationwide gave Finn consent to settle her claims with the tortfeasor's insurance company, thus impairing Nationwide's subrogation rights. Accordingly, we reverse the trial court's decision in part and remand the matter to the trial court.
 {¶ 3} The facts herein are not disputed by the parties. On November 13, 1999, Finn was involved in an automobile accident with Christine Caudill. At the time of the accident, Finn was driving her own vehicle and was not acting within the scope of her employment with the Kenton City School District. The accident was caused by Caudill's negligence. Caudill was operating an underinsured motor vehicle. As a result of the accident, Finn sustained severe injuries and eventually settled with Caudill's insurance company for $12,500. Competing affidavits were submitted as to whether Finn obtained Nationwide's consent to settle.
 {¶ 4} On November 2, 2001, Finn filed a complaint in the Allen County Common Pleas Court for UM/UIM coverage against her personal insurance carrier, Cincinnati Insurance Company, and Nationwide, her employer's insurance carrier. Notably, Finn did not include the Wausau Insurance Company as a defendant in this action, which Nationwide raised as an affirmative defense, and the Cincinnati Insurance Company is not a party to this appeal. In response to Finn's complaint, Nationwide counter-claimed, seeking a declaration that Finn was not entitled to recover UM/UIM coverage under the Wausau, education, or umbrella policies.
 {¶ 5} Thereafter, both Finn and Nationwide filed motions for summary judgment. Finn claimed that as a matter of law she was entitled to UM/UIM coverage under the Wausau, education, and umbrella policies of insurance pursuant to the Ohio Supreme Court's decision in Scott-Pontzerv. Liberty Mutual Fire Insurance Company.[1] Conversely, Nationwide maintained, inter alia, that Finn's employer, Kenton City School District, was statutorily prohibited from entering an insurance contract providing UM/UIM coverage for employees acting outside the scope of their employment and, alternatively, that the insurance contracts' language precluded coverage. The trial court granted Finn's motion, holding that she was entitled to UM/UIM coverage under each policy, thus denying Nationwide's motion.
 {¶ 6} From this decision, Nationwide appeals, asserting six assignments of error for our review. For purposes of brevity and clarity, we address Nationwide's assignments of error out of the order in which they were presented. Additionally, Nationwide's second and sixth assignments will be discussed together. This appeal arises from the grant of summary judgment, thus we will begin by setting forth our standard of review.
 Standard of Review {¶ 7} Under Ohio law, a court may not grant a motion for summary judgment unless the record demonstrates: (1) that no genuine issue of material fact remains to be litigated; (2) that the moving party is entitled to judgment as a matter of law; and (3) that, after considering the evidence most strongly in the nonmovant's favor, reasonable minds can come but to one conclusion, and that conclusion is adverse to the party against whom the motion for summary judgment is made.[2] In ruling on a summary judgment motion, the trial court is not permitted to weigh evidence or choose among reasonable inferences; rather, the court must evaluate evidence, taking all permissible inference and resolving questions of credibility in favor of the nonmovant.[3] Even the inferences to be drawn from the underlying facts contained in the evidentiary materials, such as affidavits and depositions, must be construed in a light most favorable to the adverse party.[4] Appellate review of summary judgment determinations is conducted on a de novo basis;[5] therefore, this Court considers the motion independently and without deference to the trial court's findings.[6]
 Assignment of Error VI
The trial court erred in failing to find that Appellee's claims are barred under the terms of the Wausau policy as Appellee has not filed suit against Wausau.
 Assignment of Error II
Even if the trial court were correct in its finding that school boards are statutorily authorized to purchase underinsured motorists coverage which would be available to a school employee that was injured in her personal vehicle while on her personal time, which it was not, the trial court erred in finding that Appellee was entitled to recover UM/UIM coverage from the Wausau policy.
 {¶ 8} Nationwide claims that the trial court erred in finding coverage under the Wausau policy because the Wausau Business Insurance Company was not included as a party in this litigation. Finn argues that Nationwide failed to raise this issue before the trial court and, thus, waived the issue upon appeal. Finn further suggests that any discrepancy as to the proper defendants in this case was cured because Nationwide is the parent corporation of Wausau Business Insurance Company.
 {¶ 9} At the outset, we note that Nationwide properly raised, as an affirmative defense, Finn's failure to properly join all necessary parties to this action. Additionally, Nationwide argued in its motion for summary judgment that Wausau was not named as a defendant, and, thus, no judgment could be entered against them. The trial court, however, ignored this issue in granting Finn's motion for summary judgment.
 {¶ 10} The record discloses that Wausau was never served a summons or complaint, was not notified pursuant to any alternative Civil Rules of the proceedings, and did not enter an appearance in this case. The Ohio Supreme Court has determined that "[w]hile a parent corporation may have a close relationship with its subsidiary, the two remain separate and distinct legal entities."[7] Furthermore, "for a court to acquire jurisdiction there must be a proper service of summons or an entry of appearance, and a judgment rendered without proper service or entry of appearance is a nullity and void."[8] A court does not have jurisdiction to "render a personal judgment against a defendant * * * where such defendant has not appeared generally and that court has not otherwise acquired jurisdiction[.]"[9]
 {¶ 11} Accordingly, the proper service afforded to Nationwide did not act as service to Wausau. Without service upon Wausau, the trial court did not obtain personal jurisdiction to render judgment against it, and, consequently, the judgment entered in relation thereto is void. Because the trial court was without jurisdiction to enter judgment against Wausau, Nationwide's second assignment of error relating to the terms of the Wausau policy has been rendered moot. As such, we elect not to address the issues raised therein.
 {¶ 12} For these reasons, Nationwide's second and sixth assignments of error are hereby sustained.
 Assignment of Error III
The trial court erred in finding that Appellee is entitled to recover UM/UIM coverage from the Nationwide Education policy.
 {¶ 13} In its third assignment of error, Nationwide contends that the trial court erred in granting Finn's motion for summary judgment, finding that UM/UIM coverage was available to Finn under the terms of the education policy issued to the Kenton City School District. Nationwide primarily argues that an offer of UM/UIM coverage was not required under the policy and that Finn does not qualify as an insured for UM/UIM coverage.
 {¶ 14} According to the applicable version of R.C. 3937.18, insurance providers are required to offer UM/UIM coverage for every automobile liability policy of insurance issued in Ohio; in the absence of an express rejection, such coverage arises by operation of law.[10]
An "Automobile Liability or Motor Vehicle Liability Policy of Insurance" is defined by the applicable version of R.C. 3937.18 as either of the following:
(1) Any policy of insurance that serves as proof of financial responsibility, * * * for owners or operators of the motor vehicles specifically identified in the policy of insurance;
(2) Any umbrella liability policy of insurance written as excess over one or more policies described in division (L)(1) of this section.
 {¶ 15} The education policy issued to the Kenton City School District states that Nationwide shall provide coverage for any claim of liability arising out of acts or omissions by the school district or its employees. Neither party herein disputes that there was never an offer for UM/UIM coverage under the policy. Finn argues that the language in the education policy providing an exception to an exclusion operates to transform the general liability policy into an "umbrella" policy, thereby making it an "Automobile Liability or Motor Vehicle Liability Policy of Insurance," as defined in R.C. 3937.18(L). The provision at issue reads:
 B. EXCLUSIONS
This insurance does not apply:
* * *
2. To any liability arising from the ownership, operation, maintenance or use of any owned or non-owned automobile. * * * This exclusion shallnot apply to:
 * * *
 a. Items 2.(4) [the training or supervision of drivers or theiraides], (5) [the activities of drivers or their aides in supervisingpeople "occupying" any vehicle], and (6) [the training or supervision ofemployees who are `loading and unloading' and `automobile'] above, ifexcluded under the `named insured's' automobile or fleet liabilitypolicy.[11]
 {¶ 1} Accordingly, paragraph B(2)(f) provides direct coverage for any liability arising during various activities if the automobile policy excludes coverage for that liability. In other words, if the automobile policy will not cover the liability, the education policy will. Thus, the "if excluded" language in paragraph (B)(2)(f) operates to create excess or umbrella insurance over the automobile policy in limited circumstances. Accordingly, the education policy is an "Automobile Liability or Motor Vehicle Liability Policy of Insurance" as defined by R.C. 3937.18(L)(2), and UM/UIM coverage arises under the policy by operation of law.
 {¶ 2} Our inquiry does not end here, however, because we must further determine whether Finn is an insured under the policy and entitled to UM/UIM coverage. Nationwide contends that Finn is not an "insured" as defined in the policy. We disagree.
 {¶ 3} The education policy issued to the Kenton City School District defines "insureds" as follows:
 SECTION IV. DEFINITIONS
1. The word `insured' means the school district, the County Board of Mental Retardation/Developmental Disability (MRDD) and any other organization named in the Declarations and any of the following whileacting within the scope of his or her duties as:
a. Any full or part time employee or substitute employee of the organization named in the Declarations[.]
 {¶ 4} In this case, there is no dispute that Finn was not acting within the scope of employment at the time of the accident, which Nationwide maintains excludes her from coverage. Conversely, Finn argues that the rationale in the third part of Scott-Pontzer controls the outcome herein.
 {¶ 5} In Scott-Pontzer, the Supreme Court determined that UM/UIM coverage arose by operation of law under a general business liability insurance policy issued to Scott-'s employer by Liberty Mutual Insurance Company. The Court then examined whether the definition section within the policy's liability portion, which defined insureds as those acting within the scope of employment,[12] could be applied to limit the scope of UM/UIM coverage, which arose by operation of law. The Supreme Court concluded in the negative, reasoning that "any language in the * * * umbrella policy restricting insurance coverage was intended to apply solely to excess liability coverage and not for purposes of underinsured motorist coverage."[13] Accordingly, the Court held there was no requirement that the insured had to be acting during the scope of her employment to qualify for UM/UIM coverage.[14] Finn argues that this rationale should be applied to the facts herein, providing that the language in the education policy restricting coverage to employees acting within the scope of employment is inapplicable.
 {¶ 6} Adopting the rationale of the United States District Court for the Northern District of Ohio, in Lawler v. Fireman's Fund InsuranceCompany,[15] this Court, in Zirger v. Ferkel, distinguished the rationale discussed above in Scott-Pontzer from an insurance policy identical to the policy here and precluded UM/UIM coverage.[16]
Therein, we found that the scope of employment language in Scott-Pontzer
was contained in an exclusion, thus differing from the policy at issue where such language was contained in the definition of who was an insured.[17] However, as noted above, the scope of employment restriction in Scott-Pontzer was contained in the definition of who is an insured and not in an exclusion. Accordingly, we must overrule Zirger
insofar as it holds contrary to Scott-Pontzer in this regard.
 {¶ 7} In light of the foregoing and the rationale inScott-Pontzer, because UM/UIM coverage arose by operation of law herein, the scope of employment language in the education policy's definition of who is an insured was intended to apply only to excess liability coverage and not for purposes of UM/UIM coverage.[18] Consequently, there is no requirement that Finn had to be acting within the scope of her employment to qualify for UM/UIM coverage, and she is entitled to such coverage under the policy.
 {¶ 8} For these reasons, Nationwide's third assignment is overruled.
 Assignment of Error V
The trial court erred in finding that there is UM/UIM coverage available under the terms of the Nationwide Umbrella for the reason that there is no UM/UIM coverage available under the terms of the Wausau or Nationwide Education Policies.
 {¶ 9} Nationwide argues in its fifth assignment of error that Finn does not qualify for UM/UIM coverage under the umbrella policy issued to Kenton City School District. We agree.
 {¶ 10} In Scott-Pontzer, the Ohio Supreme Court held that where UM/UIM coverage arises by operation of law, any language in the liability policy restricting coverage was intended to apply solely to liability coverage and not for purposes of UM/UIM coverage.[19] However, where a liability policy expressly includes UM/UIM coverage within the contract, restrictions and other coverage limitations are intended to apply for purposes of UM/UIM coverage.[20]
 {¶ 11} In this case, Kenton City School District was issued an umbrella policy of insurance by Nationwide that included a UM/UIM endorsement. Because the policy expressly provides for UM/UIM coverage, it is clear that the insurer offered and the insured accepted such coverage. By doing so, the umbrella policy includes UM/UIM coverage by contract, thus any exclusions or restrictions of who is an insured contained therein are applicable.[21] The umbrella policy defines an insured, in pertinent part, as those employees acting within the scope of their employment or performing duties related to the conduct of the business. The parties do not contest that Finn was not within the scope of employment at the time of the accident herein, thus she would not be defined as an insured under the policy. Accordingly, because this case involves an umbrella policy that included UM/UIM coverage by contract and limited the definition of who was an insured to those acting within the scope of their employment, Finn would not be an insured under the policy.[22]
 {¶ 12} In light of the foregoing, we sustain Nationwide's fifth assignment of error.
 Assignment of Error I
The trial court erred in finding that there is uninsured/underinsured motorists coverage available to Appellee from the Wausau Auto Policy, the Nationwide Education policy and the Nationwide Umbrella Policy for the reason that a board of education cannot, as a matter of law, purchase UM/UIM coverage for an employee who is injured while operating his or her own vehicle outside the scope of his or her employment.
 {¶ 13} Nationwide contends in its first assignment of error that school boards are statutorily precluded from entering insurance contracts that provide UM/UIM coverage for injuries sustained by an employee not acting within the scope of their employment.[23] On the other hand, Finn avers that the statutory language does not preclude school boards from obtaining UM/UIM coverage for employees not acting within the scope of their employment and that the holding in Scott-Pontzer is applicable based upon the policy terms.
 {¶ 14} R.C. 3313.201 grants school boards authority to purchase motor vehicle insurance for its employees, stating in pertinent part:
[t]he board of education of each school district shall procure a policyor policies of insurance insuring * * * employees * * * of the schooldistrict against liability on account of damage or injury to persons andproperty, * * * including liability on account of death or accident bywrongful act, occasioned by the operation of a motor vehicle * * * ownedor operated by the school district. Each board of education maysupplement the policy or policies of insurance with * * * uninsuredmotorists insurance.[24]
 {¶ 15} Both the Eighth and Tenth Appellate Districts in Ohio have held that R.C. 3313.201 grants school boards the authority to purchase UM/UIM coverage and does not require that insureds be acting within the scope of their employment to obtain coverage.[25] And, the Ninth District addressed the same issue concluding that [t]he school district's authority to purchase particular types of insurance has no bearing on determining the scope of UM/UIM coverage under the terms of the policies. A challenge to the school district's legal authority to enter into these insurance contracts would be a defense to enforcement of the contract; it has no bearing on the construction of its terms.[26]
 {¶ 16} In so holding, each of these courts found Scott-Pontzer to be applicable to policies of insurance issued to school boards.
 {¶ 17} Nationwide's essentially argues that the contract of insurance as defined, applying Scott-Pontzer, is illegal. However, "when challenging a contract's enforceability based upon illegality, one does not challenge the terms to the agreement."[27] Therefore, a court is not permitted to interpret the terms of the policy according to statutory restrictions on what a school district is permitted to purchase. Furthermore, it is elementary that Nationwide, the party against whom enforcement of the policy is sought, cannot evade their responsibility under the policy by claiming that the party seeking enforcement did not have the capacity or authority to contract.
 {¶ 18} Based upon the above, we find that R.C. 3313.201 does not preclude school boards from obtaining UM/UIM coverage. And, because of the Supreme Court's holding in Scott-Pontzer, the school board and its employees obtained greater coverage than they bargained for, and that neither makes the policy illegal, nor does it bar its enforcement.
 {¶ 19} Consequently, Nationwide's first assignment of error is hereby overruled.
 Assignment of Error IV
The trial court erred in finding that Nationwide had given Appellee consent to settle her claims against the alleged tortfeaser, thereby extinguishing Nationwide's subrogation rights, as the trial court clearly and improperly acted as a trier of fact.
 {¶ 20} In its fourth assignment of error, Nationwide maintains that the trial court deviated from the summary judgment standard of review by weighing conflicting evidence concerning whether Finn protected Nationwide's subrogation rights by obtaining its consent to settle her claims with Christine Caudill's insurance provider. In response, Finn contends that the trial court's weighing of the evidence in this regard was not an abuse of discretion. Considering that UM/UIM coverage is only provided by the terms of the education policy herein, we will limit this assignment of error accordingly.
 {¶ 21} The education policy provides the following applicable conditions:
 SECTION VII. CONDITIONS
* * *
 B. Action Against Us
l. No action shall lie against us unless, as a condition precedent thereto, there shall have been full compliance with all of the terms of this policy[.]
* * *
 D. Subrogation
In the event of any payment under this policy, we shall be subrogated to all the `insured's' rights of recovery therefore against any person or organization and the `insured' shall execute and deliver instruments and papers and do whatever else is necessary to secure such rights. The `insured' shall do nothing after loss to prejudice such rights.
 {¶ 22} The Ohio Supreme Court has held that such subrogation provisions are a condition precedent to the insurer's duty to provide UM/UIM coverage,[28] which is also expressly provided by the policy language quoted above. As a condition precedent, an insured's failure to comply therewith precludes recovery under UM/UIM coverage arising by operation of law.[29]
 {¶ 23} In the past, subrogation-related provisions have been held to be absolute preconditions to recovery that are materially breached in the absence of compliance, thus precluding an insured's recovery.[30]
However, the Ohio Supreme Court has modified this absolute rule, establishing a two-part inquiry for courts to follow when issues relating to breach of subrogation or similar provisions are raised:[31]
 [i]n cases involving the alleged breach of a * * * subrogation-relatedclause, the first step is to determine whether the provision actually wasbreached. If it was not, the inquiry is at an end, and UIM coverage mustbe provided. Also, if the insurer failed to respond within a reasonabletime to a request for consent to the settlement offer, or unjustifiablywithheld consent, the release will not preclude recovery under the UIMpolicy, and the subrogation clause will be disregarded. If the * * *subrogation-related clause was breached, the second step is to determinewhether the UIM insurer was prejudiced. If a breach occurred, apresumption of prejudice to the insurer arises, which the insured partybears the burden of presenting evidence to rebut.[32]
 {¶ 24} In this case, Nationwide submitted an affidavit relating that Finn did not obtain its consent to settle her claims with Christine Caudill, thus impairing its right to subrogation. In response, Finn submitted a competing affidavit from her attorney stating that he had been granted permission from Nationwide to settle with Caudill's insurance provider. In light of the competing affidavits, we find that genuine issues of material fact concerning whether consent was given are presented, and the trial court erred by holding "as a matter of law * * * plaintiff provided Nationwide * * * proper and prompt notice of her claim and received permission to accept the settlement offer from the tortfeasor." In so holding, the trial court improperly determined credibility and weighed the evidence contrary to the summary judgment standards previously discussed. Consequently, we must remand the case to the trial court for a determination concerning whether Finn breached the subrogation clause within the education policy, and, if so, whether Nationwide was prejudiced as a result.
 {¶ 25} Nationwide's fourth assignment of error is sustained.
 {¶ 26} Having found error prejudicial to Appellant herein, in the particulars assigned and argued, the judgment of the trial court is hereby reversed insofar as it relates to coverage under the Wausau and umbrella policies and the subrogation provision in the education policy, and the matter is remanded for further proceedings in accordance with this opinion.
Judgment affirmed in part, reversed in part and cause remanded.
[1] (1999), 85 Ohio St.3d 660.
[2] Civ.R. 56(C); Horton v. Harwick Chemical Corp. (1985),73 Ohio St.3d 679, 686-87.
[3] Good v. Krohn (2002), 151 Ohio App.3d 832, 835, 2002-Ohio-4001, at ¶ 7, citing Jacobs v. Racevskis (1995), 105 Ohio App.3d 1, 7.
[4] Hannah v. Dayton Power Light Co. (1998), 82 Ohio St.3d 482,485.
[5] Griner v. Minster Bd. of Edn. (1998), 128 Ohio App.3d 425,430.
[6] J.A. Industries, Inc. v. All American Plastics, Inc. (1999),133 Ohio App.3d 76, 82.
[7] Linko v. Indemn. Ins. Co. of North America (2000), 90 Ohio St.3d 445,449-50, 2000-Ohio-92, superceded by statute on other grounds as stated inBlatt v. Pacific Employers Ins. Co. (N.D.Ohio. 2002), 220 F. Supp.2d 861,866. See, also, North v. Higbee Co. (1936), 131 Ohio St. 507.
[8] Lincoln Tavern, Inc. v. Snader (1956), 165 Ohio St. 61, 64.
[9] Crawley v. Reserve Co. (Sept. 30, 1993), Lake App. No. 93-L-012, quoting State ex rel. Tempero v. Colopy (1962), 173 Ohio St. 122, paragraph one of the syllabus.
[10] Abate v. Pioneer Mut. Cas. Co. (1970), 22 Ohio St.2d 161; Overtonv. Western Res. Group (Dec. 8, 1999), Wayne App. No. 99CA0007.
[11] Emphasis added.
[12] See Scott-Pontzer v. Liberty Mut. Fire Ins. Co., (Jan. 20, 1998), Stark App. No. 1997 CA 00152, quoting, in pertinent part, the policy language of who is an insured therein.
[13] Scott-Pontzer, 85 Ohio St.3d at 666 (emphasis added).
[14] Id.
[15] (2001), 163 F. Supp.2d 841.
[16] Zirger v. Ferkel (June 6, 2002), Seneca App. No. 13-02-05, 2002-Ohio-2822, at ¶ 55-59.
[17] Id., citing Lawler, 163 F. Supp.2d at 856.
[18] Scott-Pontzer, 85 Ohio St.3d at 666.
[19] Id.
[20] Rall v. Johnson (Mar. 21, 2002), Wyandot App. No. 16-02-13, 2003-Ohio-1373, at ¶ 9, citing Mazza v. American Continental Ins.Co. (Jan. 29, 2003), Summit App. No. 21192, 2002-Ohio-360, at ¶ 75-77.
[21] Mazza, supra, at ¶ 75-79.
[22] See Id.
[23] See Nationwide Agribusiness Ins. Co. v. Roshong (6th Cir. Sept. 5, 2002), U.S. Circuit Court of Appeals Case No. 01-4009, unreported.
[24] R.C. 3313.201(A).
[25] Mizen v. Utica Natl. Ins. Group (2002), 147 Ohio App.3d 274,278-79, 2002-Ohio-37, at ¶ 23; Roberts v. Wausau Business Ins. Co.
(2002), 149 Ohio App.3d 612, 622, 2002-Ohio-4734, at ¶ 61; Griffithv. Wausau Business Ins. Co. (Mar. 4, 2003), Franklin App. Nos. 02AP-551, 01AP-664, 2003-Ohio-955, at ¶ 14-15.
[26] Allen v. Johnson (July 3, 2002), Wayne App. No. 01CA0046, 2002-Ohio-3404, at ¶ 22.
[27] Countrymark Cooperative, Inc. v. Smith (1997),124 Ohio App.3d 159,164.
[28] Bogan v. Progressive Cas. Ins. Co. (1988), 36 Ohio St.3d 22, paragraph four of the syllabus, overruled in part on other grounds byFerrando v. Auto-Owners Mut. Ins. Co. (2002), 98 Ohio St.3d 186; PersonalServ. Ins. Co. v. Bailey-Oney (Nov. 27, 2002), Marion App. No. 9-02-38, 2002-Ohio-6486, at ¶ 18.
[29] See, e.g., Personal Serv. Inc. Co., supra, at ¶ 18; Knox v.Travelers Ins. Co. (Dec. 17, 2002), Franklin App. No. 02 AP-28, 2002-Ohio-6958, at ¶ 24-28.
[30] See Ferrando, 98 Ohio St.3d at ¶ 88.
[31] Id. at ¶ 89.
[32] Id. at ¶ 91 (citations omitted).